YT, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 95–997.

United States Court of Veterans Appeals.

June 24, 1996.

YT, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Jacqueline Simms, were on the brief, for appellee.

Before KRAMER, FARLEY, and IVERS, Judges.

IVERS, Judge:

The widow of a veteran appeals an August 4, 1994 decision of the Board of Veterans' Appeals (BVA or Board) which denied her claims because of (1) the lack of a timely substantive appeal from the June 1990 denial of service connection for the cause of the veteran's death and (2) the lack of new and material evidence to reopen a claim for service connection for the cause of the veteran's death. The Secretary filed a brief. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the reasons stated below, the Court will affirm the decision of the BVA.

## I. BACKGROUND

The veteran served on active duty in the United States Marine Corps from July 1972 to July 1976, and again from January 1982 to May 1983. Record (R.) at 75, 79, 84. At the time of his death, the veteran was service connected for complex partial epilepsy and generalized convulsive epilepsy rated at 40% disabling as a result of head injury. R. at 28, 67, 72–73.

In October 1987, the veteran was diagnosed positive for the human immunodeficiency virus (HIV). Prior to this diagnosis, he had been seen by VA in 1984, 1985, and 1986. R. at 87–95, 104–06, 118–33. None of the records shows any diagnoses related to HIV or acquired immunodeficiency syndrome (AIDS). At a VA hospital in October 1987, the veteran reported "markedly decreased energy levels" since January 1987 and shortness of breath with minimal exertion since March 1987. The veteran stated that, as time progressed, he had begun to experience more symptoms, including "increased shortness of breath, onset of night sweats, fevers and chills." R. at 151. Also in October 1987, the veteran went to a public health clinic for HIV testing. The test results were positive for HIV. R. at 151–52. The veteran related a history of prostitute exposure (but did not specify a time period) and four instances of male rape in 1981. R. at 151.

In October 1989, the veteran applied for service connection for HIV, hearing loss with tinnitus (a noise in the ears, such as ringing, buzzing, roaring, or clicking. DORLAND'S IL-LUSTRATED MEDICAL DICTIONARY 1714 (28TH ED.1994) [hereinafter DORLAND'S] ) and for an eye and a lung condition due to careless or improper treatment at a VA Medical Center (VAMC) in 1987 under 38 U.S.C. § 1151. R. at 179. In November 1989, the veteran requested that his wife be appointed his custodian. R. at 182. VA medical records received in February 1990, dating from June 1987 to November 1989, disclosed that the veteran was treated for several disorders, including AIDS. R. at 140–60, 163, 185–224, 233–62. A hospitalization report dated October 1989, revealed that the veteran had admitted to prostitute exposure in the past and that his spouse had reported that the veteran had admitted to homosexual activity in the past. R. at 235.

In April 1990, the VA regional office (RO) denied entitlement to service connection for AIDS, tinnitus, and hearing loss. R. at 267–70. Regarding the claim for AIDS the RO stated,

> With no evidence of AIDS or other manifestations of HIV infection prior to October 1987, grant of service connection for AIDS would require resorting to pure speculation rather than reasonable doubt, as this is 4 1/2 years following release from active duty. AIDS is not subject to grant of service connection on any presumptive basis.

R. at 268. The claim for compensation under 38 U.S.C. § 1151 was also denied. R. at 269. VA denied the request for the appointment of a fiduciary on the basis that there was no medical evidence which showed that the veteran was mentally incapable of handling his financial affairs. *Id.*

The veteran died on April 29, 1990. The death certificate, dated May 7, 1990, listed the cause of death as HIV-related complications due to "CMV [cytomegalovirus] complications—Blindness," "Herpes Zoster Infections," and "PCP [Pneumocystis carinii] Pneumonia." R. at 280. Cytomegalovirus is any virus of the subfamily Betaherpesvirinae, highly host-specific herpesviruses. Depending upon the age and the immune status of the host, cytomegalovirus can cause a variety of clinical syndromes, collectively known as

cytomegalic inclusion disease. DORLAND'S at 424. PCP is the causative agent of a highly contagious, epidemic, interstitial plasma cell pneumonia. Occasionally it causes extrapulmonary disease in immunocompromised patients. DORLAND'S at 1315.

In May 1990, the appellant submitted an application for Dependency and Indemnity Compensation (DIC), stating her desire to continue her husband's claim for service connection for HIV. R. at 283–86. The appellant listed her address in the box requesting the mailing address of the claimant. R. at 283.

In June 1990, the RO denied entitlement to service connection for the cause of the veteran's death because there was no evidence of AIDS in service or until more than four years following his discharge. R. at 288–89. The RO also found that the veteran's service-connected seizure disorder would not have impaired his ability to withstand his fatal illness. R. at 289. The appellant was notified of the denial by a letter dated August 8, 1990. R. at 291.

The appellant submitted a Notice of Disagreement (NOD) in August 1990. R. at 297. On November 5, 1990, the RO issued a Statement of the Case (SOC) and forwarded a copy to the appellant's service representative and nothing in the record reflects that it was not mailed to the appellant at the address given by the appellant. R. at 299–304. Neither copy was returned as undeliverable.

On September 10, 1991, the appellant submitted a Statement in Support of Claim in which she inquired about the status of her claim, stating that she had not received an SOC. The appellant's mailing address was the same one she had previously given. R. at 310.

In November 1991, the appellant submitted the following documents: duplicate VA medical records, dating from June 1986 to January 1988, showing treatment for disorders other than AIDS (R. at 318–21); lay statements dated March 1983, which noted observations relating to the veteran's service-connected post-concussion syndrome and his physical condition between November 1982 and March 1983 (R. at 324–25); service medical records (SMRs) dating from January 1974 to August 1974, none of which contained any evidence of HIV or any evidence of problems related to AIDS (R. at 328–32). Also, in November 1991, the appellant submitted a VA Form 1–9, Appeal to the Board of Veterans' Appeals (Form 1–9), with attachments, including a letter. R. at 335–38. In the letter, the appellant argued that she had not told doctors that her husband had engaged in homosexual activity, that he had symptoms which were documented back to 1974, although some of the symptoms were wrongly attributed to his epilepsy. She provided her opinion that the veteran had the HIV virus when he was discharged from service. R. at 336–38.

On a November 1991 report of contact the appellant's representative, the American Legion (AL), stated that an "SOC dated 11–5–90 is a matter of record in our office file folder" for the veteran. R. at 341.

In November 1991, the RO determined that the appellant's appeal from the June 1990 RO decision denying entitlement to service connection for the cause of the veteran's death was not timely filed. The Form 1–9 was accepted as an attempted reopened claim only and not as a substantive appeal. R. at 343.

The RO, in December 1991, informed the appellant of its decision to continue the denial of her claim for service connection for cause of death. It also noted that the evidence "while new is not material." R. at 345. The appellant filed an NOD in January 1992. R. at 348. In February 1992, the appellant submitted a Form 1–9 with the same address as given previously. R. at 361. She also submitted duplicate copies of the veteran's SMRs dating from January 1974 to August 1974. R. at 358–59.

In April 1992, the appellant appeared at a VA personal hearing. R. at 370–77. At that time, the appellant presented her contentions regarding entitlement to service connection for the cause of the veteran's death and the timeliness of the substantive appeal from the June 1990 denial of service connection for the cause of the veteran's death. The appellant also submitted three pages from a book containing general information about AIDS. R. at 370. The appellant stated that the veter-

an was sick when she met him in 1984. R. at 371. She also stated that she had checked with the veteran's first wife and the symptoms that developed after the July 1982 head injury in service were the same as his AIDS symptoms. *Ibid.* The appellant stated that before the veteran was diagnosed with AIDS, he had been treated by Drs. Cooper, Helms, and Rebecca for pneumonia and the flu. R. at 372. She also testified that the veteran had told her that he had received a blood transfusion of "6 pints of blood or something ... because he had lost a great amount of blood while he was waiting to be transported to some kind of Dr. there to see him for the head injury." *Ibid.* Her representative also gave his lay opinion regarding the incubation period for AIDS to develop after exposure and repeated the contention that the veteran was exposed to AIDS in the service. R. at 377.

In May 1992, a Supplemental SOC (SSOC) stated:

The substantive appeal from the decision denying service connection for cause of death was not timely filed. The evidence submitted since the denial of service connection for cause of death by Rating Decision of June 26, 1990, became final on August 8, 1991, is not new and material and does not serve to reopen the claim.

R. at 385.

In July 1992, the appellant submitted a Form 1–9. R. at 387. She attached a short letter repeating her contention that the incubation period was not taken into account. R. at 389.

In May 1993, the BVA remanded the appellant's case to the RO in an effort to obtain

... the full name and addresses of all of the physicians who treated the veteran soon after service discharge for symptoms such as pneumonia and the flu, to include Drs. Cooper, Helms and Rebecca. The RO should then contact these physicians in an attempt to obtain copies of all of the veteran's treatment records. Any records obtained should be associated with the claims folder. The appellant should be asked to sign any necessary consent forms

for release of the veteran's private medical records.

R. at 407.

In June 1993, a private medical record, dated November 1985, from the Clemson Medical Clinic was received. The record disclosed that the veteran had been treated for a stomach disorder. R. at 413–14. In July 1993, VA and private medical records dated June 1987 to September 1987 were received. The records showed that the veteran had been treated for several disorders, but did not reveal any evidence of HIV or AIDS-related complications. R. at 434–44. In an August 1993 SSOC, the records were found new but not material. R. at 465–67.

In September 1993, records from September 1987 to November 1989 were submitted by James W. Hellams, M.D. These records disclosed treatment for various disorders, including AIDS. R. at 470–72. A record was also submitted from January 1984, by Jake K. Holcombe, M.D., showing treatment for venereal disease. R. at 480. In a December 1993 SSOC, the evidence was found new but not material. R. at 500–01.

In February 1994, the appellant filed a Form 1–9 reasserting her previous contentions. R. at 505–06. The same address was again listed. R. at 505.

On August 4, 1994, the BVA found that (1) the appellant did not submit a timely substantive appeal with respect to the June 1990 rating decision; (2) the June 1990 rating determination denying service connection for the cause of the veteran's death was final; and (3) new and material evidence to reopen the claim of entitlement to service connection for the veteran's cause of death had not been submitted. R. at 9.

## II. ANALYSIS

### 1. Timely Appeal

Appellate review of an RO decision is initiated by an NOD and "completed by a substantive appeal after a statement of the case is furnished...." 38 U.S.C. § 7105(a). "Proper completion and filing of a Substantive Appeal are the last actions the appellant needs to take to perfect an appeal." 38

C.F.R. § 20.202 (1995). A substantive appeal consists of a properly completed Form 1–9, or correspondence containing the necessary information. 38 U.S.C. § 7105(d)(3); 38 C.F.R. § 20.202. After an appellant receives the SOC, the appeal must be filed within "sixty days from the date the statement of the case is mailed," 38 U.S.C. § 7105(d)(3), or within the remainder of the one-year period from the date the notification of the RO decision was mailed, whichever period ends later. 38 C.F.R. § 20.302(b) (1995); *see Mason v. Brown*, 8 Vet.App. 44, 54 (1995) (citing *Roy v. Brown*, 5 Vet.App. 554, 555 (1993)); *Cuevas v. Principi*, 3 Vet.App. 542, 546 (1992) (where claimant did not perfect appeal by timely filing substantive appeal, RO rating decision became final); *see also* 38 C.F.R. § 19.32 (1995) (agency of original jurisdiction may close the appeal without notice to an appellant or his or her representative for failure to respond to an SOC within the period allowed; if appellant files substantive appeal within the one-year period, appeal will be reactivated).

█ In the instant case, the record shows that the appellant submitted an application for DIC in May 1990. R. at 283–86. In June 1990, the RO denied appellant's claim. R. at 288–89. The appellant was notified of the denial by a letter dated August 8, 1990, which was sent to the address given by the appellant. R. at 291.

An NOD was submitted by the appellant in August 1990. R. at 297. On November 5, 1990, the RO issued an SOC and forwarded a copy to the appellant's service representative and nothing in the record reflects that it was not mailed to the appellant at the address given by the appellant. R. at 299–304. The appellant did not inquire about her claim until September 10, 1991, when she submitted a Statement in Support of Claim. The appellant's address was the one she had previously given. R. at 310.

The appellant had until August 8, 1991, a year after she was sent the August 8, 1990, letter, to perfect her appeal. The appellant did not pursue her claim until September 10, 1991. Therefore, she did not perfect her appeal. Instead, the appellant contends that she never received the November 1990 SOC which was evidently mailed to her at the address she had previously given. R. at 299–303. The record shows that from May 1990, when the appellant submitted her claim for DIC, her address did not change. Correspondence was addressed there from the BVA, and nothing sent to that address was returned as undeliverable. R. at 283, 291, 299, 310, 335, 348, 361, 387, 389, 485, 505. Additionally, a Report of Contact, dated November 1991 by the appellant's representative, indicates that the "SOC dated 11–5–90 is a matter of record in our office file folder" for the veteran. R. at 341.

█ This Court has held that the law presumes the regularity of the administrative process "in the absence of clear evidence to the contrary." *Mindenhall v. Brown*, 7 Vet. App. 271, 274 (1994) (citing *Ashley v. Derwinski*, 2 Vet.App. 62, 64–65 (1992)); *see Mason*, 8 Vet.App. at 53. The appellant's statement that she did not receive the November 1990 SOC is not the "clear evidence to the contrary" that is required to rebut the presumption of regularity that the notice was sent. Nothing sent by the BVA before or after the mailing of the SOC to that address was returned as undeliverable. The presumption of regularity of the administrative process "in the absence of clear evidence to the contrary" applies to the VA mailing of the November 5, 1990, SOC in the same manner that it applies to the BVA mailing of a decision. *Ashley, supra.* The June 1990 rating decision was not appealed and was therefore final.

### 2. New and Material Evidence

Pursuant to 38 U.S.C. § 1310, DIC may be paid to a surviving spouse of a veteran who died from a service-connected disability. *See Hanna v. Brown*, 6 Vet.App. 507, 510 (1994). A veteran's death will be considered service connected where a service-connected disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a) (1995). A service-connected disability is the principal cause of death when that disability, "singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto." 38 C.F.R. § 3.312(b) (1995). To be a contributory

cause of death, the disability must have "contributed substantially or materially" to death, "combined to cause death," or "aided or lent assistance to the production of death." 38 C.F.R. § 3.312(c) (1995).

Pursuant to 38 U.S.C. § 5108, the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C. § 7104(b). On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *See Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *See Colvin v. Derwinski*, 1 Vet. App. 171, 174 (1991). "New evidence" is evidence that is not "merely cumulative" of other evidence on the record. *Ibid.* Evidence is "material" where it is "relevant to and probative of the issue at hand" and where it is of "sufficient weight or significance that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Sklar v. Brown*, 5 Vet.App. 140, 145 (1993); *Cox v. Brown*, 5 Vet.App. 95, 98 (1993); *Colvin, supra.* Second, if the BVA determines that the evidence is new and material, it must reopen the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992). Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1). *See Masors, supra.*

The appellant is required by law to present "new and material" evidence before VA is required to reopen and develop and adjudicate a claim as to its merits. "[A]bsent the submission of new and material evidence, the claim cannot be reopened or readjudicated by the VA." *Henderson v. Brown*, 6 Vet.App. 45, 46 (1993). If the appellant fails to meet either part of this threshold requirement, the BVA is not required to consider the merits of the claim. 38 U.S.C. §§ 5108, 7104(b); 38 C.F.R. § 20.1105 (1995). The appellant has failed to meet this burden.

The appellant contends in her informal brief that the BVA should accept the evidence she has submitted as new and material. She claims that all evidence was new because it had never been presented before and that it was material because it could possibly change the outcome of the claim. Appellant's Brief (Br.) at 2.

The Secretary contends that none of the evidence submitted by the appellant since the June 1990 rating denial is material to the issue of whether the veteran's HIV-related complications or AIDS was manifested during service or whether the disease was due in any way to his service-connected post-concussion syndrome with seizure disorder. Secretary's Br. at 18 (citing *Mintz v. Brown*, 6 Vet.App. 277, 280 (1994)).

The evidence submitted by the appellant since the June 1990 denial includes SMRs from January 1974 to August 1974 for unrelated ailments including urethral discharge and a left leg injury in 1974. Other medical records submitted are from August 1979 to August 1980, for an upper respiratory infection, which was cured with medications, and for problems with his vision in 1979. R. at 328–29, 332. Other medical records provided by the appellant include private medical records for the treatment of venereal disease in 1984, headaches and an upset stomach in 1985, and other unrelated disorders. R. at 413, 480, 434–44. These records are not material because they do not show any treatment or diagnosis of AIDS or HIV. AIDS-related symptoms do not begin to appear in the veteran's medical records until 1987, over four years after his discharge from service. R. at 430–32, 470–72.

The appellant also submitted lay statements, dated in March 1983, which describe the veteran's in-service head injury and observation of his physical condition between November 1982 and March 1983. R. at 324–25. The BVA found this evidence to be cumulative because there was already evidence in the record relating to the in-service injury. Furthermore, the BVA found the statements irrelevant to, and not probative of, whether the service-connected disability caused the development of AIDS or whether

HIV had its inception in service. R. at 14. No mention is made of any AIDS-related illness or treatment during that time. The evidence reiterated information that was in the record regarding the veteran's in-service injury. This evidence is not relevant to show that the veteran contracted AIDS while in the service.

Other evidence submitted by the appellant included testimony from the April 1992 VA personal hearing and three pages from a book with general information about AIDS, blood testing, and drug testing. R. at 370–77. This evidence was new but not material to the issue of whether service connection should be granted for the veteran's cause of death. The appellant was attempting to show a nexus between the veteran's service and his cause of death by discussing the symptoms of his head injury and asserting that these were also symptoms of AIDS. She stated that the appellant had been experiencing these symptoms since 1981 or 1982. R. at 373. The appellant also testified that the veteran had told her that he received a blood transfusion because he had lost so much blood from his head injury. R. at 372. There is no record of a blood transfusion in the SMRs. This testimony is contrary to the objective medical evidence of record surrounding the veteran's head injury. R. at 15. Her opinion is not material to the issue of medical causation. The appellant can certainly provide an eyewitness account of the veteran's visible symptoms, and she has done so. *Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992). Nevertheless, the appellant is not a licensed health care professional and her testimony regarding the cause of any symptoms alleged to have been experienced by the veteran is not competent medical evidence. *See Moray v. Brown*, 5 Vet.App. 211 (1993) (in order to reopen claim for service connection where the issue is whether disability was incurred or aggravated by service, expert medical evidence is required); *see also Espiritu*, 2 Vet.App. at 494 (lay persons are not competent to offer medical opinions).

Finally it should be noted that none of the evidence of record, either old or new, meets the requirement of demonstrating a relation-ship between the appellant's service-connected disability and cause of death. 38 U.S.C. § 1310; 38 C.F.R. § 3.312(a) (1995); *see Hanna*, 6 Vet.App. at 510.

## III. CONCLUSION

Upon consideration of the record, the Secretary's brief, and the appellant's brief, the Court holds that the appellant has not demonstrated that the BVA committed either factual or legal error which would warrant reversal or remand. The Court is also satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). Accordingly, upon consideration of the record, the Secretary's brief, and the appellant's informal brief, the August 4, 1994, decision of the BVA is AFFIRMED.