# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-1375

JIMMIE HARVEY, JR., APPELLANT,

V.

HERSHEL W. GOBER,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 5, 2000)                                    Decided Sep 19, 2000)

*Patrick H. Stiehm*, of Alexandria, Virginia, for the appellant.

*Gary E. O'Connor*, with whom *Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; and *Michael A. Leonard*, Deputy Assistant General Counsel, all of Washington, D.C., were on brief, for the appellee.

Before NEBEKER, *Chief Judge*, and KRAMER and IVERS, *Judges*

PER CURIAM:  The appellant, Jimmie Harvey, Jr., appeals from a June 15, 1998, Board of Veterans' Appeals (Board or BVA) decision that denied his application for Service Disabled Veterans' Insurance (SDVI) on the grounds that Mr. Harvey failed to meet the basic criteria for entitlement to such benefits.  Mr. Harvey filed a brief and a reply brief in support of his claim, and the Secretary filed a brief urging affirmance of the BVA decision.  This appeal is timely, and the Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a).  Upon consideration of the submissions to the Court and the record on appeal, the Court will affirm the Board's decision for the following reasons.

## I. FACTS

Mr. Harvey served on active duty in the U.S. Army from May 1974 to March 1975.  Record (R.) at 45.  In October 1974, he suffered an acute schizophrenic episode and was admitted to the hospital.  R. at 36.  A medical board determined in January 1975 that he was no longer fit for

military duty, and he was separated from service three months later. R. at 36, 45. Within a few days of his service separation, Mr. Harvey filed a claim for compensation benefits with VA for his schizophrenia. R. at 47-48. He underwent a VA medical examination in April 1975 and was diagnosed with "schizophrenic reaction, acute, undifferentiated type." R. at 53. The examiner noted in his report that Mr. Harvey was competent and was not in need of psychiatric hospitalization. *Id.* In May 1975, the VA regional office (RO) granted Mr. Harvey's claim for service connection and assigned a 50% disability rating for his schizophrenia. R. at 58. Because Mr. Harvey's service-connected disorder was rated above 10% disabling, he was eligible to apply for SDVI. *See* 38 U.S.C. § 241 (1970). His award letter, dated May 27, 1975, reflects that a copy of this decision was to be sent to the "VA Center" in St. Paul, Minnesota. *Id.*

Mr. Harvey filed an application for SDVI in August 1995. R. at 126-27. The RO denied his request via letter in January 1996, stating that he was no longer eligible for these benefits. R. at 205-06. At the time of Mr. Harvey's award in 1975, applications for SDVI, the RO reported, must have been submitted within one year from the date VA notifies a veteran that his or her disability is service connected. R. at 205; *see also* 38 U.S.C. § 241 (1970). The letter went on to state that RO records showed that VA sent Mr. Harvey notice of his service connection on May 27, 1975. R. at 205. Consequently, Mr. Harvey's SDVI application was untimely by more than twenty years. *Id.* The RO also noted that subsequent changes to the law had extended the eligibility period for SDVI to two years from the date of service connection notification for new disability ratings dated after September 1, 1991, but that this did "not apply when second or subsequent ratings are re-ratings of the same disability." *Id.; see also* 38 U.S.C. § 7722 (1999).

Mr. Harvey filed a Notice of Disagreement in March 1996. R. at 208-11. His representative from Disabled American Veterans asserted that Mr. Harvey's service-connected disability "rendered him unable to make decisions regarding matters such as insurance coverage." R. at 242. The Board denied the claim in June 1998 (R. at 1-7), concluding that Mr. Harvey "has not demonstrated that he was incompetent at any time during which he was eligible to apply for [SDVI] . . . . Therefore, the statutory one-year eligibility period has not been tolled, and the veteran's application for such benefits is untimely." R. at 5. The Board also stated that "[t]he law does not require the VA to

2

provide notice of eligibility for [SDVI], and such lack of notice does not toll the statutory application period." R. at 4. This appeal follows.

## II. ANALYSIS

The Board denied Mr. Harvey's claim for SDVI because it concluded that he had not established that he was incompetent during his one year of eligibility, and therefore, the filing period was not tolled. *See* 38 U.S.C. § 722(a) (1970) (explaining that where the veteran is shown to have been mentally incompetent during the SDVI filing period, the application for SDVI may be filed within one year after the appointment of a guardian or within one year after the removal of mental incompetency) (recodified as 38 U.S.C. § 1922(a) by Pub.L. No. 102-86, § 201(a)(1), 105 Stat. 414, 415 (1991) (extending that period to two years after the appointment of a guardian or the removal of incompetency)); 38 C.F.R. § 3.353 (1999) (providing the standard for determining incompetency). Mr. Harvey, however, has not raised this issue before this Court. Thus, the Court deems the issue abandoned and will not address it further. *See Ford v. Gober*, 10 Vet.App. 531, 535-36 (1997) (citing *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993)).

Mr. Harvey contends that the Board's finding that VA was not required to provide him with notice of SDVI eligibility was contrary to law. Appellant's Brief (Br.) at 6-10. Specifically, he argues that 38 U.S.C. § 7722(b)-(c) created a legal duty on the part of the Secretary to provide veterans with notice of SDVI eligibility and that the Secretary did not fulfill his duty in this case. Thus, he maintains that the statutory filing period for SDVI should be tolled. *Id.* Mr. Harvey did not raise these issues before the RO or the Board. Consequently, the Secretary argues that they are not properly before the Court. Secretary's Br. at 7.

The Court disagrees with the Secretary and holds that it possesses appropriate jurisdiction to consider those issues pursuant to *Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000). In *Maggitt,* the Federal Circuit held that the Court, in its discretion, may hear legal arguments presented for the first time provided that it has proper jurisdiction of the claim. *Id.* In deciding whether or not to hear a newly raised legal argument, "[t]he test is whether the interests of the individual weigh heavily against the institutional interest the doctrine [of exhaustion of administrative remedies] exists to serve." *Id. (*citing *McCarthy v. Madigan*, 503 U.S. 140, 146, 112 S.Ct. 1081, 117 L.Ed.2d 291

3

(1992)). "Those institutional interests are, in the main, to protect agency administrative authority and to promote judicial efficiency." *Id.*

The doctrine of exhaustion, however, may not be invoked against an individual when: (1) invocation of the doctrine will result in a prejudicial delay to the individual or doubt exists as to whether the agency is empowered to grant effective relief, (2) the agency fashioned remedy is considered inadequate because the agency is "shown to be biased or has otherwise predetermined the issue before it[,]" or (3) the Congressional purpose or purposes of the statutory scheme under which the individual is seeking to avoid application of the doctrine would be frustrated to the detriment of the individual. *Id.* at 1378.

The Court holds that, to invoke the doctrine of exhaustion of administrative remedies against Mr. Harvey would require him to present his newly raised legal arguments to the Board, even though it has already concluded that VA was not required to notify him of his eligibility for SDVI. The Board's conclusion that VA was not obligated by law to provide notice to Mr. Harvey is indicative that VA has already predetermined the issue. Therefore, the Court, in its discretion, will not invoke the doctrine of exhaustion of administrative remedies against Mr Harvey. *See id.* The invocation of the doctrine would also result in further delay, which while perhaps not prejudicial to Mr. Harvey, would be unnecessary and require further unnecessary expenditure of adjudicative resources.

At the time that Mr. Harvey was awarded service connection for his psychiatric disability in May 1975 (R. at 60), 38 U.S.C. § 722 provided for a one-year period, commencing on the date service connection is determined, in which a veteran awarded service connection for a condition rated at least 10% disabling could apply for SDVI benefits. *See* 38 U.S.C. § 722(a) (1970). Because Mr. Harvey did not submit his application for SDVI until August 1995 (R. at 126-27), more than 20 years after his award of service connection, that application was considered to have been untimely under both the former § 722(a) and current § 1922(a). He contends, however, that VA failed to notify him of his eligibility to apply for SDVI and that, because of such failure, the statutory period for filing should be equitably tolled. For the following reasons, the Court disagrees.

First, the Court must address what sort of obligation VA had to notify Mr. Harvey of his eligibility for SDVI. At the time VA granted Mr. Harvey service connection for his schizophrenia, the pertinent law regarding notice was found in 38 U.S.C. § 241(b)-(c) (1970). Subsequently, the

4

law was altered, and now the relevant provisions are incorporated in 38 U.S.C. § 7722 (b)-(c).  The old and new provisions are essentially the same in content.  Both provide that VA "shall by letter advise each veteran at the time of the veteran's discharge or release from active military . . . service (or as soon as possible after such discharge or release) of all benefits and services under laws administered by the Department for which the veteran may be eligible."  38 U.S.C. § 7722 (b); *see also* 38 U.S.C. § 241(b).  Both also provide that VA "shall distribute full information to eligible veterans . . . regarding all benefits and services to which they may be entitled under laws administered by the Department . . . ."  38 U.S.C. § 7722 (c); *see also* 38 U.S.C. § 241(c).  For the purposes of this case, the Court will assume, without deciding, that the Secretary was under a duty to notify Mr. Harvey of his eligibility for SDVI under both the former § 241 and the current § 7722, and that if proper notification had not been made, the time for filing an application should be tolled.  *See Bailey v. West*, 160 F.3d 1360, 1365 (Fed. Cir. 1998) (holding that in appropriate circumstances, a statutory filing period may be equitably tolled due to conduct of VA).  Accordingly, the Court need not decide whether the old or new provisions would be applicable here.  *See Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991).

There are specific procedures that VA follows in order to notify veterans of their SDVI eligibility:

> First, a copy of the rating sheet with the award letter is sent to the VA Insurance Center having insurance jurisdiction over the area in which the Regional Office is located.  *See* DEPARTMENT OF VETERANS BENEFITS MANUAL M29-1, Part IV, para. 1.02a (Jan. 27, 1976) . . . .  Second, when the Insurance Center receives a copy of the award letter, it is screened to determine whether the veteran is eligible for SDVI.  *Id.*, para. 1.02e.  Third, veterans with eligible rating decisions are sent a form letter (FL 29-5a) and a pamphlet (VA Pamphlet 29-9, Service-Disabled Veterans Insurance RH-Information and Premium Rates) regarding the requirements for applying for SDVI.  *Id.*, para. 1.03.

Secretary's Br. at 9-10.  The Secretary represents that these procedures were in effect at the time VA granted Mr. Harvey service connection, and that shortly after Mr. Harvey's rating decision was issued, VA documented the notification procedures in its Manual M29-1.  *Id.*  He further represents that the proper Insurance Center at the time of Mr. Harvey's award of service connection was in St. Paul, Minnesota.  *Id.* at 2.  Additionally, the Secretary's appendices 5-6 show that Form Letter FL

29-5a and Pamphlet 29-9 were created in July 1972--almost three years before Mr. Harvey's rating decision was issued. *Id.* at 10, app. 5-6.

Mr. Harvey seems to contend that these procedures were not properly applied in his case, as it is his position that he never received notice of his SDVI eligibility. Appellant's Br. at 4-5. He first asserts that the service connection award letter, which was sent on May 27, 1975, according to VA records, stated only that a copy of the letter was provided to the VA Insurance Center in St. Paul, Minnesota. R. at 58. The letter, he argues, did not notify him specifically of his SDVI eligibility. *Id.* at 10; Reply Br. at 4. Mr. Harvey, however, has not made any express assertion that he did not receive by separate mailing Form Letter FL 29-5a or Pamphlet 29-9, which discuss eligibility requirements for SDVI. Moreover, even assuming that Mr. Harvey's argument could be understood to be an assertion that he never received these materials, such a contention does not constitute the "clear evidence" necessary to overcome the presumption that the materials were sent to him in accordance with the normal course of VA business. *See YT v. Brown*, 9 Vet.App. 195, 199 (1996) (holding that a statement of non-receipt does not rebut the presumption of regularity attached to the normal procedure of mailing Statements of the Case to claimants); *Ashley v. Derwinski*, 2 Vet.App. 62, 64 (1992) (stating that the Court must apply a "presumption of regularity" to "official acts of public officers, and in the absence of *clear evidence to the contrary*, courts presume that they have properly discharged their official duties" ) (emphasis in original) (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926)).

Mr. Harvey next asserts that the Insurance Center was never actually notified of his service connection award by the RO, and consequently, there was no act that would prompt the Insurance Center to mail the SDVI eligibility notification to him. Appellant's Br. at 10; Reply Br. at 4. He has nevertheless presented no evidence in support of such a proposition. Because the May 1975 RO decision sent to Mr. Harvey shows that VA sent a copy of that decision to the "VA Center, St. Paul, Minnesota," (R. at 58), the Court will assume, pursuant to the presumption of administrative regularity, that a copy of his award letter was, in fact, sent to and received by the Minnesota location (*See Ashley*, 2 Vet.App. at 64; *Chemical Foundation, Inc.*, 272 U.S. at 14-15).

Finally, Mr. Harvey asserts that if the Insurance Center had actually received a copy of his award letter, then a file containing this letter and a copy of a subsequent notification letter to him

6

regarding SDVI eligibility would have been prepared by the Insurance Center in the normal course of business. Appellant's Br. at 10. That such a file does not now exist, Mr. Harvey argues, signifies that no such notice was ever sent to him and would thus rebut the presumption of administrative regularity. *Id.* The Secretary's representation at oral argument, however, reflects that at the time of Mr. Harvey's service connection award, part of the regular administrative process of the Insurance Center was to destroy any notification file that might have existed whenever an application was not filed within the statutory period for filing. Consequently, the present non-existence of any file, many years after the time in which such a file should have been destroyed in the normal course of business, in no way demonstrates administrative irregularity. Because the file's non-existence at this time cannot be relied upon to defeat the presumption of administrative regularity, Mr. Harvey's argument must fail.

Even if the Court were to conclude that VA has a statutory duty to notify a veteran of his or her SDVI eligibility, the Court holds that VA presumably has fulfilled its duty in this case. Therefore, honoring Mr. Harvey's request to toll the statutory filing period for SDVI benefits is unwarranted.

### III. CONCLUSION

Upon consideration of the foregoing, the Board's June 15, 1998, decision is AFFIRMED.