# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-1886

PETER A. TELLEX, APPELLANT,

v.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided        September 26, 2001   )

*Timothy Salvatore*, of York, Pennsylvania, was on the pleadings for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Michael A. Leonard*, Deputy Assistant General Counsel; and *Ann G. Gawalt*, all of Washington, D.C., were on the pleadings for the appellee.

Before HOLDAWAY, STEINBERG, and GREENE, *Judges*.

STEINBERG, *Judge*: The appellant, through counsel, seeks review of a June 15, 1998, decision of the Board of Veterans' Appeals (BVA or Board) denying payment or reimbursement by the Department of Veterans Affairs (VA) of medical expenses incurred for a hospitalization at a private medical facility. Record (R.) at 3. The appellant has filed a brief and a reply brief, and the Secretary has filed a brief. On November 30, 2000, the Court ordered the parties to provide supplemental briefing regarding the potential applicability to this appeal of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA). *Tellex v. Gober*, 14 Vet.App. 196 (2000) (per curiam order). The parties have filed responses to that order. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will dismiss the appeal.

## I. Background

The veteran served on active duty in the U.S. Navy from September 1945 to April 1947. R. at 9. According to a January 1996 VA service-verification document, the appellant since some time prior to May 1995 has been rated by VA as service connected for a "hand injury" and for "osteomyelitis". R. at 174. There is no evidence or allegation that the veteran is service connected for any other condition.

Medical records from VA medical centers (VAMCs) showed treatment for various non-service-connected conditions during the period from August 1994 to February 1995. R. at 15-39; *see also* R. at 193 (August 1996 Substantive Appeal to BVA in which veteran reported receiving VAMC treatment in August 1993). March 31, 1995, VAMC medical records showed that the veteran had reported having had abdominal and left-flank pain for the prior two days, and contained a diagnostic impression that he had recently passed a kidney stone. R. at 145.

On May 18, 1995, the veteran reported to the emergency room at the John F. Kennedy Memorial Medical Center (JFK-MC), a private facility, and complained of having experienced nausea and having vomited blood for the previous 48 hours. R. at 116. He was admitted to the hospital and assessed as having Mallory-Weis syndrome of the esophagus and a left-kidney stone. R. at 108-09, 119. (Mallory-Weis syndrome is a tear "that follows typically upon many hours or days of severe vomiting". *Dorland's Illustrated Medical Dictionary* 1634 (28th ed. 1994).) He was discharged on May 24, 1995, after having undergone surgical repair of the esophageal tear and removal of the kidney stone. R. at 124-27.

According to a VA report of contact, "Mary" from the JFK-MC notified the Miami, Florida, VAMC on May 19, 1995, that the veteran had been admitted with a tentative diagnosis of "GI Bleed", and VA advised the JFK-MC that VA would "not pay" for the transfer of the veteran to the Miami VAMC because the condition was not one for which the veteran was rated by VA as service connected. R. at 129-30. A letter to the veteran that was dated that same day from the Chief of the Miami VAMC's Medical Administration Service stated that JFK-MC had made a request that VA "assume financial responsibility for th[e] admission" but that because the veteran was "non[-]service-connected for the condition treated, . . . VA [could ]not assume financial responsibility". R. at 132. The letter also informed the veteran that he was "not eligible for payment and/or reimbursement of

[his] expenses" related to his admission to the JFK-MC, and purported to have "enclosed a copy of [his] procedural and appellate rights." *Ibid.*

Later, at a March 1998 hearing before the BVA, the veteran testified under oath that he "wouldn't have had any opportunity to see" that letter because it had been sent to his home and would have arrived while he was in the hospital. R. at 238; *see also* R. at 203 (veteran's similar testimony at August 1996 hearing at Miami VAMC). He also indicated that he did not receive "information" that he could have been transferred to a VAMC once his condition was stabilized. R. at 236. The veteran's spouse also testified under oath at the March 1998 hearing that VA had not "at any time" informed her that the veteran could have been transferred to the Miami VAMC. R. at 236. She also testified that she had contacted "Randy White at the VA" (she could not recall whether Mr. White was at the "Riviera Beach Clinic" or the Miami VAMC) on May 19, 1995, and informed him that her husband was undergoing treatment at the JFK Medical Center. R. at 234; *see also* R. at 203 (statement by VA officer at August 1996 hearing at Miami VAMC that Mr. White had "never been an employee" of Miami VAMC). Mrs. Tellex reported that Mr. White had "recommended that I wait 'til [the veteran] was discharged from the hospital to gather up all the bills and everything and then bring them up to him" and did not tell her that the veteran could "be transferred to the VA hospital" where the veteran was regularly treated. R. at 234. Mrs. Tellex confirmed in response to questioning that "the implication, if not the outright statement, was that . . . VA would take care of the bills". R. at 235. An August 1996 letter signed by Barbara Lebel, a friend of Mrs. Tellex's, "advise[d]" that she "was present when Mrs. Peter Tellex made a telephone call to Mr. Randy White, on May 19, 1995, at the VA." R. at 198.

According to the veteran's March 1998 sworn testimony, he submitted his medical bills to "Mr. Lehman" at the West Palm Beach, Florida, VAMC in July 1995, and Mr. Lehman "indicated . . . that he felt that he should be able to authorize th[e] bill". R. at 235, 240. The veteran had made a similar allegation at his August 1996 hearing at the Miami VAMC, in response to which Mr. Lehman wrote: "I did not state to Mr. Tellex that I would authorize payment of his claim for unauthorized care." R. at 208. The record on appeal (ROA) contains an October 26, 1995, form letter from the Miami VAMC requesting that the veteran provide certain medical records and

"[p]roper invoices" (R. at 152). An identical form letter dated November 1995 requested only "[p]roper invoices". R. at 155.

Both parties agree that the veteran submitted a completed claim form on February 27, 1996 (R. at 158). Appellant's Brief (Br.) at 4; Secretary's Br. at 5. That claim was denied by the Miami VAMC in a letter dated February 28, 1996. R. at 176. The veteran timely appealed (R. at 179, 192-96), and, in his August 1996 Form 9 (Substantive Appeal to the BVA), asserted: "I do not consider my request a request for unauthorized services; [i]t is a request for payment of service authorized by the VA" (R. at 196).

A May 1997 letter from the Patient Accounts Manager at the JFK-MC suggested that that facility had accepted from the veteran a reduced payment, which the veteran asserted was due to the private facility's "accepting their part of the responsibility in failing to advise us that I could have been transferred to the [Miami VAMC]." R. at 220, 222.

In the June 15, 1998, BVA decision here on appeal, the Board denied reimbursement or payment for the veteran's medical expenses related to his hospitalization at the JFK-MC. R. at 2.

## II. Analysis

The appellant presents no argument regarding the Board's decision that he was not entitled to reimbursement for unauthorized medical expenses; hence, the Court concludes that he has abandoned that claim on appeal. *See Ford v. Gober*, 10 Vet.App. 531, 535-36 (1997); *Degmetich v. Brown*, 8 Vet.App. 208, 209 (1995), *aff'd*, 104 F.3d 1328 (Fed. Cir. 1997). The appellant's position is that he reasonably raised a claim for authorization for treatment at a private facility at VA expense, which the BVA failed to adjudicate, and that the Court should vacate the Board decision and remand the unadjudicated claim.

Section 1703 of title 38, U.S. Code, provides in pertinent part:

> (a) When Department facilities are not capable of furnishing economical hospital care or medical services . . . or are not capable of furnishing the care or services required, the Secretary, as authorized in section 1710 of this title, may contract with non-Department facilities in order to furnish any of the following:
> . . .

> (3) Hospital care or medical services for the treatment of medical emergencies which pose a serious threat to the life or health of a veteran receiving medical services in a Department facility or nursing home care under section 1720 of this title until such time following the furnishing of care in the non-Department facility as the veteran can be safely transferred to a Department facility.

38 U.S.C. § 1703(a). The Secretary's regulations have "interpreted [section] 1703 to allow for 'individual authorizations' as well as contracts with non-VA facilities. *See* 38 C.F.R. § 17.52(a) [(2000)]." *Zimick v. West*, 11 Vet.App. 45, 51 (1998). However, "[t]he Secretary requires that, in order to be admitted to a non-VA facility at VA expense, such an admission must be authorized in advance by VA (or within 72 hours in the case of an emergency)." *Ibid.* (citing 38 C.F.R. § 17.54(a) (2000)); *Malone v. Gober*, 10 Vet.App. 539, 544 (1997) (citing § 17.54 and noting that contracted-for hospital care "must be authorized in advance").

In this case, there is no dispute that the veteran's care was not ***pre***authorized; rather, the appellant argues that his wife's May 19, 1995, conversation with Mr. White at VA constituted a claim for authorization of emergency care within 72 hours (R. at 234-35), and that he appealed the denial of that claim to the Board, which failed to adjudicate the claim. Appellant's Br. at 8-11. The Secretary argues that any such claim was denied by the Miami VAMC acting as the VA agency of original jurisdiction (AOJ) (*see* R. at 132 (May 19, 1995, letter from Miami VAMC stating veteran was "not eligible for payment [by VA] . . . of [his medical] expenses")) and that no timely Notice of Disagreement (NOD) was filed by the appellant to initiate an appeal as to that claim. Secretary's Br. at 8-9. We will address each of the parties' positions, in turn.

First, as to the appellant's contention that he filed a claim for authorization for VA reimbursement for the medical expenses that were incurred as a result of the private treatment at the JFK-MC, the Court has held that where a "review of all documents and oral testimony reasonably reveals that the claimant is seeking a particular benefit, the Board is required to adjudicate the issue of the claimant's entitlement to such a benefit". *Suttmann v. Brown*, 5 Vet.App. 127, 132 (1993); *see also Buckley v. West*, 12 Vet.App. 76, 82-83 (1998); *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991). Because we will conclude below that there is no jurisdiction-conferring NOD as to a claim

for authorization for payment of medical services at a private facility pursuant to section 1703(a), we need not decide whether, under these circumstances, Mrs. Tellex's telephone call and the JFK-MC's contact with the Miami VAMC, which was reduced to writing (a report of contact (R. at 129-30)) by the VAMC, did in fact constitute such a claim. *See Felton v. Brown*, 4 Vet.App. 363, 367 (1993) (noting that RO had accepted as an NOD a notation of a "telephone inquiry, on behalf of the veteran, to the . . . RO from Ohio U.S. Senator Glenn's office"); *Buckley*, *Suttmann*, and *EF*, all *supra*; *see also Rodriguez v. West*, 189 F.3d 1351, 1354 (Fed. Cir. 1999) (although VA regulations "do[ ] not permit informal non-written claims[,] . . . . there is no set form that an informal written claim must take"), *cert. denied*, 529 U.S. 1004 (2000).

In general, the Court has jurisdiction to review a final BVA decision only where an NOD was filed on or after November 18, 1988, as to an underlying decision by the AOJ. *See* Veterans' Judicial Review Act, Pub. L. No. 100-687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]; *Velez v. West*, 11 Vet.App. 148, 157 (1998) ("Court has no jurisdiction over an issue absent a post-November [17], 1988, NOD, expressing disagreement with an [AOJ]'s decision on that issue or with an RO's failure to adjudicate that [issue]"); *see also Barrera v. Gober*, 122 F.3d 1030, 1031 (Fed. Cir. 1997); *Grantham v. Brown*, 114 F.3d 1156, 1157 (Fed. Cir. 1997). Generally, an NOD "shall be filed within one year from the date of mailing of notice of the result of initial review or determination" with which it is disagreeing. 38 U.S.C. § 7105(b)(1); *see Evans (Billy)*, *supra*. "'Whether a document is an NOD is a question of law for the Court to determine de novo under 38 U.S.C. § 7261(a).'" *Buckley*, 12 Vet.App. at 82 (quoting *Beyrle v. Brown*, 9 Vet.App. 24, 27-28 (1996)).

In this case, the Court finds no basis for doubting that any informal claim for authorization submitted by the veteran was denied by the Miami VAMC, acting as the AOJ, in its May 1995 letter, which stated: "You are not eligible for *payment* and/or reimbursement of the[ ] expenses" at issue in this case. R. at 132 (emphasis added). The appellant does not point to, nor has the Court been able to locate, any document created by the veteran that is contained in the ROA, or any document (including the August 1996 Form 9) that might exist and that is referred to by any other document contained in the ROA, that was dated "within one year" of the May 1995 VAMC decision and thus could possibly serve as a jurisdiction-conferring NOD as to that May 1995 VAMC decision. Hence,

the Court has no jurisdiction over any claim for authorization for payment of private medical expenses at the JFK-MC. 38 U.S.C. § 7105(b)(1); *see* VJRA § 402; *Barrera*, *Grantham*, *Evans (Billy)*, and *Velez*, all *supra*; *see also Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995) (dismissing appeal of claim as to which no post-VJRA NOD had been filed).

Rather than attempting to show that he filed a timely NOD to the May 1995 denial, the appellant's position is that the denial was not valid because he did not receive it until August 1996. Br. at 4. "[T]here is a presumption of regularity that the Secretary properly discharged his official duties by mailing a copy of a VA decision to the last known address of the appellant and the appellant's representative, if any, on the date that the decision was issued." *Woods v. Gober*, 14 Vet.App. 214, 220 (2000) (citing *Davis (Desmond) v. Brown*, 7 Vet.App. 298, 300 (1994); *Ashley v. Derwinski*, 2 Vet.App. 62, 64- 65 (1992); and *Chute v. Derwinski*, 1 Vet.App. 352, 353 (1991)); *see also Butler v. Principi*, 244 F.3d 1337, 1339 (Fed. Cir. 2001) (presumption of regularity applied to mailing of copy of notice of appellate rights so that where veteran did not timely file NOD from administrative decision such decision was proper basis for denial of veteran's claim). The presumption of regularity may be rebutted when the appellant submits "clear evidence to the effect that [VA's] regular mailing practices are not regular or that they were not followed". *Woods*, *supra* (internal quotation marks and citations omitted). The appellant has made **no** attempt at such a showing here, relying instead on his statements that he did not receive the letter. However, a statement that the mailing in question was not received is insufficient to rebut the presumption of regularity. *See YT v. Brown*, 9 Vet.App. 195, 199 (1996) (making such holding as to mailing of Statement of the Case); *see also Harvey v. Gober*, 14 Vet.App. 137, 141 (2000) (per curiam) (holding that presumption of regularity of mailing applies to sending by RO of notification of eligibility for Service Disabled Veterans' Insurance, and that denial of receiving of such notice did not rebut that presumption); *cf. Schoolman v. West*, 12 Vet.App. 307, 311 (1999) (holding that benefit-of-the-doubt doctrine of 38 U.S.C. § 5107(b) does not apply to rebut presumption of regularity of mailing). In view of the foregoing, the Court must conclude that the presumption of regularity as to the Miami VAMC's having properly mailed to the veteran its May 1995 AOJ denial applies to this case and has not been rebutted. *See Butler*, *Woods*, *Harvey*, *YT*, *Davis (Desmond)*, *Ashley*, and *Chute*, all *supra*.

7

In addition, the Secretary defends the Board decision on appeal on the merits by responding that the "[a]ppellant fails to meet the eligibility criteria for contracted care under [section] 1703(a)(3)", and urges the Court to find no prejudicial error as to the Board's failure to consider the application of section 1703(a)(3) to this appeal. Br. at 13. As we stated above, although we hold that we lack jurisdiction to reach this question, we note that section 1703(a)(3) provides that the Secretary "may contract" to provide payment for private "medical services for the treatment of medical emergencies which pose a serious threat to the life or health of a veteran receiving medical services in a Department facility . . . until such time following the furnishing of care in the non-Department facility as the veteran can be safely transferred to a Department facility". The Secretary's regulations require that in order for VA to provide payment for admission to a private facility such an admission must be authorized "within 72 hours after the hour of admission". 38 C.F.R. § 17.54(a) (2000); *see Zimick* and *Malone*, both *supra*. Thus, there are at least three prerequisites to an award of a claim for payment of authorized private medical services: (1) A "contract" must exist, *see Meakin v. West*, 11 Vet.App. 183, 186 (1998) (noting that section 1703(a) "*authorization* for fee basis treatment takes place only after . . . the letting of a contract"); (2) the applicant for section 1703(a)(3) authorization must be "receiving medical services in a [VA] . . . facility"; and (3) that authorization must have been provided "within 72 hours after the hour of admission" to the private facility, 38 C.F.R. § 17.54(a). Even if the appellant could meet the first two of those requirements, the Board made a factual determination that the evidence did not support his assertion that his wife had received telephonic authorization for the medical care in question. R. at 5. The favorable evidence, according to the Board, consisted primarily of Mrs. Tellex's own testimony that Mr. White had told her "by implication, if not . . . outright statement" that "VA would take care of the bills". R. at 235. The Board cited as other favorable evidence the August 1996 letter from Ms. Lebel, but that letter attested only to the fact of the telephone call; it was silent as to the content of any conversation between Mrs. Tellex and Mr. White. R. at 198. Weighing against a finding that VA authorized the payment, the Board relied upon "the lack of any other evidence in the claims file to confirm [Mrs. Tellex's] assertions". R. at 5.

The Court reviews BVA findings of fact using the "clearly erroneous" standard of review in 38 U.S.C. § 7261(a)(4). In determining whether a finding is clearly erroneous, "this Court is not

8

permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA . . . [, the Court] cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). Having reviewed the ROA in its entirety, the Court notes that the evidence other than Mrs. Tellex's testimony suggests that VA's position has consistently been to deny authorization of the payment for the expense of care at the JFK-MC. *See* R. at 129 (May 19, 1995, Miami VAMC report of contact with JFK-MC indicating that VA would not pay for the treatment); R. at 132 (May 19, 1995, letter from Miami VAMC to veteran stating that he "was not eligible for payment"); *cf.* R. at 240 (September 1996 memorandum from VA employee, Mr. Lehman, disputing veteran's statement that Mr. Lehman had authorized reimbursing veteran for treatment at JFK-MC). Because these facts provide a plausible basis for the Board's conclusion that the veteran did not receive authorization from VA for his treatment at the JFK-MC, the Court would be bound to affirm the BVA's finding of fact as not clearly erroneous. *See* 38 U.S.C. § 7261(a); *Gilbert*, *supra*. Moreover, because there is no other instance of alleged timely (i.e., "within 72 hours after the hour of admission") authorization pursuant to § 17.54(a), the Court would, if it had jurisdiction over the merits of the appellant's claim, likely determine that the Board's failure to address section 1703 was not prejudicial to the veteran because the Board's finding of fact precludes any possibility that the veteran could obtain relief pursuant to section 1703. 38 C.F.R. § 17.54; *Zimick* and *Malone*, both *supra*. In any event, again, we lack jurisdiction over the claim.

While this appeal was pending before this Court, Congress enacted the VCAA, and the Court sought supplemental briefing on November 30, 2000, as to the potential applicability of the VCAA to this case. *Tellex*, *supra*. Because neither party has argued in its response that application of the VCAA would be beneficial to the appeal, the Court does not express any view in the first instance regarding the application of the VCAA to this appeal. *See Williams v. Principi*, __ Vet.App. __, __, No. 98-1491, 2001 WL 1002132 (Aug. 31, 2001) (Court did not address applicability of VCAA to claim pending on appeal when VCAA enacted); *cf. Savage v. Gober*, 10 Vet.App. 488, 498 (1997) (declining to address issue first raised after appellant had filed motion for panel review); *see generally Seal-Flex, Inc. v. Athletic Track and Court Construction*, 172 F.3d 836, 842 (Fed. Cir.

1999) ("this court declines to raise an issue sua sponte which the parties have not presented on appeal"). The Court will grant the appellant's motion for leave to file his response out-of-time.

### III. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the parties' pleadings, the Court holds that the appellant has abandoned the appeal as to the Board's denial of his claim for reimbursement of unauthorized medical expenses. *See Ford* and *Degmetich*, both *supra.* As to the appellant's claim for authorization of private medical expenses, the Court holds that it is without jurisdiction to address the Board's failure to adjudicate that claim because no timely NOD was filed by the appellant as to the AOJ's May 19, 1995, denial of that claim. *See* 38 U.S.C. § 7105(b); VJRA § 402; *Barrera*, *Grantham*, *Evans (Billy)*, *Velez*, and *Tablazon*, all *supra*. The appellant's motion for leave to file a response out-of-time to the Court's November 30, 2000, order, is granted.

APPEAL DISMISSED.