Citation Nr: 1829353 
Decision Date: 05/25/18 Archive Date: 06/12/18

DOCKET NO. 11-22 176 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Providence, Rhode Island


THE ISSUES

1. Entitlement to service connection for a dental disorder for compensation purposes, to include receding gums.

2. Entitlement to service connection for acid reflux.

3. Entitlement to service connection for poor vision.

4. Entitlement to service connection for an unknown illness, claimed as due to drinking contaminated water.

5. Entitlement to service connection for high blood pressure/hypertension.

6. Entitlement to service connection for right testicle pain, to include as secondary to service-connected low back disorder.

7. Entitlement to service connection for a right shoulder disorder, to include as secondary to service-connected low back disorder.

8. Entitlement to service connection for a left shoulder disorder, to include as secondary to service connected low back disorder.

9. Entitlement to service connection for a left arm disorder, to include as secondary to service-connected low back disorder.

10. Entitlement to service connection for left chest pain, to include as secondary to service-connected low back disorder.

11. Entitlement to service connection for a right leg disorder, to include as secondary to service-connected low back disorder.

12. Entitlement to service connection for a left leg disorder, to include as secondary to service connected low back disorder. 

13. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

John Kitlas, Counsel


INTRODUCTION

The Veteran served on active duty in the United States Navy from March 1978 to October 2002.

This matter is before the Board of Veterans' Appeals (Board) on appeal from rating decisions by a Department of Veterans Affairs (VA) Regional Office (RO).

The Veteran provided testimony at a hearing before the undersigned Veterans Law Judge (VLJ) in May 2013. A transcript of that hearing is of record.

In July 2014, the Board remanded this case for further development and the Veteran has waived initial consideration of evidence by the Agency of Original Jurisdiction (AOJ) that was added to the record since the time of the last adjudication of the appellate claims below. See 38 C.F.R. § 20.1304(c).

The Board notes at the time of the July 2014 remand the issues also included claims of service connection for conjunctivitis and a right ankle/heel disorder. However, a December 2017 rating decision established service connection for bilateral blepharoconjuntivitis with dry eyes, and Achilles' tendonitis of the right lower extremity. As such, these issues are no longer before the Board. The December 2017 rating decision also established service connection for a dental disorder for treatment purposes. Although the rating decision stated this was considered a full grant of the benefits sought on appeal, the Board notes that this decision did not resolve whether service connection is warranted for a dental disorder for compensation purposes. See Mays v. Brown, 5 Vet. App. 302, 306 (1993). Therefore, this aspect of the dental claim remains before the Board for appellate consideration.

For the reasons addressed in the REMAND portion of the decision below, the Board finds that further development is still required regarding the Veteran's claims of service connection for the bilateral shoulders, left arm, left chest, and bilateral legs. Accordingly, these claims are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. The competent medical evidence does not reflect the Veteran has a current dental disorder for which compensation may be paid.

2. The competent and credible evidence of record reflects it is at least as likely as not the Veteran's current gastroesophageal disorder (GERD) was incurred during active service.

3. Although the Veteran is presumed to have been exposed to contaminated water while on active duty at Camp Lejeune, the competent medical evidence does not reflect he has been diagnosed with a condition presumptively associated with such exposure.

4. The competent medical and other evidence of record reflects the Veteran's poor vision is due to refractive error, and he does not have an acquired eye disorder other than his already service-connected blepharoconjuntivitis with dry eyes that was incurred in or otherwise the result of his active service.

5. The competent and credible evidence of record reflects it is at least as likely as not the Veteran developed hypertension as a result of active service.

6. The Veteran's right testicle pain has been attributed to erectile dysfunction, chronic epididymitis, and prostate hypertrophy (BPH); and the preponderance of the competent medical and other evidence of record is against a finding these conditions were incurred in or otherwise the result of active service, or is secondary to service-connected low back disorder.

7. The competent medical and other evidence of record reflects it is at least as likely as not the Veteran developed PTSD as a result of active service.



CONCLUSIONS OF LAW

1. The criteria for a grant of service connection for a dental disorder for compensation purposes are not met. 38 U.S.C.A. §§ 1712, 5107 (West 2014); 38 C.F.R. §§ 3.306, 3.381, 4.150, 17.161 (2017).

2. The criteria for a grant of service connection for GERD are met. 38 U.S.C.A. 
§§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2017).

3. The criteria for a grant of service connection for an unknown illness, claimed as due to drinking contaminated water, are not met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2017).

4. The criteria for a grant of service connection for poor vision are not met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. § 3.303 (2017).

5. The criteria for a grant of connection for high blood pressure/hypertension are met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2017).

6. The criteria for a grant of service connection for right testicle pain, to include as secondary to service-connected low back disorder, are not met. 38 U.S.C.A. 
§§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2017).

7. The criteria for a grant of service connection for PTSD are met. 38 U.S.C.A. 
§§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (table). 

Service connection may also be established for certain chronic diseases that are present to a compensable degree within the first post-service year. See 38 C.F.R. §§ 3.307, 3.309(a). For VA purposes, hypertension means that the diastolic pressure is predominantly 90 or greater, and isolated systolic hypertension means that the systolic pressure is predominantly 160 or greater with a diastolic pressure of less than 90. See 38 C.F.R. § 4.104, Diagnostic Code 7101. As such, hypertension requires specific medical testing to diagnose and is thus not a disability capable of lay observation. Indeed, even a physician is unable to diagnose hypertension without conducting diagnostic testing.

Further, service connection may be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

The Veteran has also contended that he developed various disabilities, such as poor vision, as a result of drinking contaminated water while stationed at Camp Lejeune. His service personnel records confirm he was stationed at Camp Lejeune from 1980 to 1982. VA has acknowledged that persons residing or working at the U.S. Marine Corps Base Camp Lejeune from August 1953 through December 1987 were potentially exposed to drinking contaminated water with volatile organic compounds (VOCs). See Veterans Benefits Administration (VBA) Fast Letter 11-03 (January 11, 2011). In this regard, VA has recently established a presumption of service connection for certain diseases for veterans, former reservists, and former National Guard members who were exposed to contaminants in the water supply while serving at Camp Lejeune for no less than 30 days (either consecutive or nonconsecutive) from August 1, 1953, to December 31, 1987. See 38 U.S.C.A. 
§§ 1101, 1112, 1137; Diseases Associated with Exposure to Contaminants in the Water Supply at Camp Lejeune, 82 Fed. Reg. 4,173 (Jan. 13, 2017) (to be codified at 38 C.F.R. §§ 3.307, 3.309). Specifically, effective March 14, 2017, 38 C.F.R. 
§ 3.309(f) will be amended to provide a presumption of service connection for kidney cancer, liver cancer, Non-Hodgkin's lymphoma, adult leukemia, multiple myeloma, Parkinson's disease, aplastic anemia and other myelodysplastic syndromes, and bladder cancer, which have become manifest to a degree of 10 percent or more at any time after service if the Veteran was stationed at Camp Lejeune between August 1, 1953 and December 31, 1987. The regulation applies to all claims pending before VA on and after March 14, 2017.

Determinations as to service connection will be based on review of the entire evidence of record, to include all pertinent medical and lay evidence, with due consideration to VA's policy to administer the law under a broad and liberal interpretation consistent with the facts in each individual case. 38 U.S.C.A. § 1154(a); 38 C.F.R. § 3.303(a).

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrence of symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d at 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board").

In addition, the record reflects the Veteran has a medical background as his military occupational specialty (MOS) included field medical service technician and hospital corpsman. This background must be taken into account when evaluating his own opinion regarding the diagnosis and etiology of his claimed disabilities. See Goss v. Brown, 9 Vet. App. 109, 114-15 (1996); YT v. Brown, 9 Vet. App. 195, 201 (1996); and Rucker v. Brown, 10 Vet. App. 67, 74 (1997) (All of which generally stand for the proposition that any health care professional is qualified to render a medical opinion.). Nevertheless, in evaluating the probative value of his medical statements, the Board may look at factors such as the individual knowledge and skill in analyzing the medical data. See Black v. Brown, 10 Vet. App. 297, 284 (1997). The Board may also take the veteran's self-interest into account in assessing the weight to be accorded to his self-assessment. See Pond v. West, 12 Vet, App. 341, 345 (1999) (Although the Board must take a physician-veteran's opinions into consideration, it may consider whether self-interest may be a factor in making such statements, even if the veteran himself is a health care professional); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) (The Board may consider self interest in evaluating the testimony of claimants).

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Indeed, in Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit (Federal Circuit), citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C.A. § 7104(a). Moreover, the United States Court of Appeals for Veterans Claims (Court) has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). 

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b). When a reasonable doubt arises regarding service origin, such doubt will be resolved in the favor of the claimant. Reasonable doubt is doubt which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102. The question is whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which event the claim must be denied. Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990). 

Analysis - Dental

Service connection may be awarded for missing teeth due to dental trauma or bone loss in service. The law and regulations also provide that treatable carious teeth, replaceable missing teeth, dental or alveolar abscesses, and periodontal disease are considered non-disabling conditions and may be considered service-connected solely for the purpose of determining entitlement to VA dental examination or outpatient dental treatment. See 38 U.S.C.A. § 1712; 38 C.F.R. §§ 3.381, 17.161; see also Woodson v. Brown, 8 Vet. App. 352, 354 (1995). However, service connection for compensation purposes is only warranted for certain dental conditions. Specifically, dental disabilities that may be awarded compensable disability ratings are set forth under 38 C.F.R. § 4.150. These disabilities include chronic osteomyelitis or osteoradionecrosis of the maxilla or mandible, loss of the mandible, nonunion or malunion of the mandible, limited temporomandibular motion, loss of the ramus, loss of the condyloid or coronoid processes, loss of the hard palate, loss of teeth due to the loss of substance of the body of the maxilla or mandible and where the lost masticatory surface cannot be restored by suitable prosthesis, when the bone loss is a result of trauma or disease but not the result of periodontal disease. 38 C.F.R. § 4.150, Diagnostic Codes 9900-9916.

In this case, the Veteran did indicate he had receding gums at the time of the May 2002 Report of Medical Assessment. He also testified that he believed his front tooth was dead as a result of being punched in the mouth while on active duty. The Board previously found, in the July 2014 remand, that his testimony as to the in-service dental trauma was credible, but found that clarification was necessary regarding the nature of the claimed disability. 

The Board notes the Veteran subsequently underwent a VA examination in November 2016 which diagnosed discoloration of the maxillary right central incisor, #8; and 5 m periodontal pocketing on mesial and distal aspects of tooth #8. Moreover, the Board acknowledges that the VA examiner opined that the condition was etiologically related to his account of in-service dental trauma. Nevertheless, the Board must find that service connection for compensation purposes must be denied as the diagnosed condition is not a dental disorder for which VA compensation may be paid. In pertinent part, the November 2016 VA examination also found the Veteran did not have anatomical loss or bony injury to the mandible, maxilla, or teeth. Further, he did not have osteomyelitis or osteoradionecrosis.

For these reasons, the claim of service connection for a dental disorder for compensation purposes must be denied.

Analysis -- Reflux

The Board notes that the Veteran's service treatment records do not contain any entries showing a diagnosis of or treatment for the claimed acid reflux. However, the Veteran has testified that he developed recurrent symptoms while on active duty, and that he self-treated the symptoms in his capacity as a medical technician/hospital corpsman. 

The Board has found the Veteran's testimony on this matter to be credible. In addition, his spouse indicated in a May 2013 lay statement that acid reflux had been present since 2001. Nevertheless, the Board found in the July 2014 remand that further development was required, in pertinent part, to clarify the nature of the current disability.

The November 2016 VA examination confirmed the current disability was GERD. Although the examiner provided a competent medical opinion against the GERD being etiologically linked to service, it does not appear the examiner adequately took into consideration the Veteran's account of recurrent symptoms since service or the supporting lay statement from his spouse. The Board further notes that an April 2017 addendum only addressed whether it was due to the contaminated water at Camp Lejeune.

In view of the foregoing, the Board finds the competent and credible evidence of record reflects it is at least as likely as not the Veteran's current GERD was incurred during active service. Therefore, service connection is warranted.

Analysis - Unknown Illness due to Contaminated Water

The Board has already acknowledged that the Veteran was stationed at Camp Lejeune during the pertinent period where it is presumed he was exposed to drinking contaminated water. Nevertheless, a thorough review of the competent medical evidence does not reflect he has been diagnosed with one of the diseases presumptively associated with such exposure pursuant to the current version of 38 C.F.R. § 3.309(f).

The Board also notes that VA does not recognize service connection for an unknown illness except for cases of veterans who served on active duty in the Southwest Asia Theater of Operations during the Persian Gulf War era. See 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317. Here, the Veteran has not claimed service connection on such a basis, nor does it appear he has the requisite service for consideration of such.

The Board further notes the Veteran has identified various conditions, such as his poor vision, which he contends are due to drinking the contaminated water at Camp Lejeune. However, such contentions are to be addressed for those specific disabilities, and not as an unknown illness.

For these reasons, the Board finds the preponderance of the evidence is against the Veteran's claim of service connection for an unknown illness due to drinking contaminated water. Consequently, the benefit-of-the-doubt doctrine is not for application, and the claim must be denied. See generally Gilbert, supra; see also Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001).

Analysis - Poor Vision

The Veteran has indicated that his visual acuity deteriorated while on active duty, and has indicated that it was due to drinking contaminated water at Camp Lejeune.

In this case, the record reflects that in addition to his already service-connected blepharoconjuntivitis with dry eyes, the Veteran's poor vision has been attributed to refractive error, presbyopia, and hyperopia. However, it is noted that the presbyopia and hyperopia findings are also considered refractive errors. See VBA Manual M21-1, IV.ii.2.B.6.c. (last accessed February 1, 2018). 

Refractive errors of the eyes are congenital or developmental defects and not disease or injury for VA compensation purposes. See 38 C.F.R. §§ 3.303(c), 4.9. Service connection is only possible in such cases when there is evidence of additional disability due to aggravation during service of the congenital defect by superimposed disease or injury. See Monroe v. Brown, 4 Vet. App. 513, 514-15 (1993); Carpenter v. Brown, 8 Vet. App. 240, 245 (1995). In other words, absent a superimposed disease or injury, service connection may not be granted for refractive error of the eyes, including hyperopia, astigmatism, and presbyopia, even if visual acuity decreased in service.

Here, although there were also findings of cataracts, a review of the record, including a pertinent VA examination in November 2016, does not reflect the Veteran has an acquired eye disorder other than his already service-connected blepharoconjuntivitis with dry eyes that was incurred in or otherwise the result of his active service. The Board notes that the Veteran has not challenged the adequacy of this VA examination, to include the qualifications of the VA examiner to provide competent medical evidence. Consequently, the Board finds that the preponderance of the evidence is against the claim of service connection for poor vision, and it must be denied.

Analysis - Hypertension

With respect to the Veteran's hypertension claim, he has essentially contended that he had elevated blood pressure readings during service which ultimately resulted in his current diagnosis of hypertension. 

The Board notes the Veteran's service treatment records do not reflect he was diagnosed with hypertension while on active duty, to include his May 2002 retirement examination. Nevertheless, an October 2009 VA examination stated the hypertension commenced in service and that the Veteran was first officially diagnosed in 2000. Clarification was requested from the examiner because the RO could not find an official diagnosis of hypertension in 2000. In the January 2010 addendum, the examiner identified various blood pressure readings he indicated occurred during active service and supported the positive etiology opinion, but these readings were from December 2005 or later. Inasmuch as these readings were all post-service, the RO denied the claim. However, the RO did not seek clarification as to whether there were any elevated blood pressure readings documented in the service treatment records which would indicate that hypertension did develop during as contended by the Veteran.

A subsequent November 2016 VA examination, and April 2017 addendum, contained opinions against the Veteran's hypertension being directly related to service, to include drinking contaminated water at Camp Lejeune. However, the November 2016 VA examination also contains the notation that hypertension was first diagnosed in January 2003, which would be within the Veteran's first post-service year and subject to presumptive service connection pursuant to 38 C.F.R. §§ 3.307, 3.309(a). In addition, the Board notes that there is evidence of elevated blood pressure readings while on active duty. For example, service treatment records apparently dated in December 2000 indicate blood pressure readings of 136/96 and 140/92. In short, there were diastolic readings consistent with hypertension while on active duty.

In view of the foregoing, and resolving all reasonable doubt in favor of the Veteran, the Board finds the competent and credible evidence of record reflects it is at least as likely as not the Veteran developed hypertension as a result of active service. Accordingly, service connection is warranted.

Analysis - Right Testicle

The Veteran has contended that he has recurrent pain in the right testicle, among other conditions, either secondary to the low back disorder itself or from the injuries sustained in the skiing accident which he originally injured the back. 

The Board notes, however, that there does not appear to be any findings of right testicle pain in the service treatment records to include his May 2002 retirement examination, and the first competent medical evidence of such appears to be years after service. For example, the November 2016 VA examination noted it first developed in 2005. 

The November 2016 VA examination attributed the Veteran's right testicle pain to erectile dysfunction, chronic epididymitis, and BPH. Moreover, the examiner provided opinions against these conditions being incurred in or otherwise the result of active service, or caused or aggravated by the service-connected low back disorder. The Veteran has not challenged the adequacy of this examination, and no competent medical evidence is of record which explicitly refutes the examiner's opinions on this matter.

In view of the foregoing, the Board finds that the preponderance of the evidence is against the Veteran's claim of service connection for right testicle pain, and it must be denied.

Analysis - PTSD

In addition to the general rules of service connection noted above, service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f). 

In this case, the Veteran has contended, in part, that he has PTSD due to an in- service sexual assault. The Board has already found his account of this stressor to be credible. Moreover, his spouse reported in the May 2013 statement that he exhibited symptoms such as inappropriate anger/outbursts since at least 1990.

The Board also notes that 38 C.F.R. § 3.304 (f)(5) provides special provisions for consideration of claims of PTSD based upon in-service personal assault. Moreover, the Federal Circuit has observed that 38 C.F.R. § 3.304(f)(5) specifically states that a medical opinion may be used to corroborate a personal-assault stressor, noting "medical opinion evidence may be submitted for use in determining whether the occurrence of a stressor is corroborated." See Menegassi v. Shinseki, 683 F.3d 1379, 1382 (Fed. Cir. 2011) (observing that the Court erred when it determined that a medical opinion based on a post-service examination of a Veteran cannot be used to establish the occurrence of a stressor); see also Patton v. West, 12 Vet. App. 272, 280 (1999) (rejecting the requirement that "something more than medical nexus evidence is required for 'credible supporting evidence' "in personal-assault cases).

The Board acknowledges that a November 2016 VA examination concluded the Veteran did not satisfy the criteria for a diagnosis of PTSD, or any other mental illness. However, in McClain v. Nicholson, 21 Vet. App. 319 (2007) the Court held that the requirement that a claimant have a current disability before service connection may be awarded for that disability is also satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim, even if no disability is present at the time of the claim's adjudication. Various medical treatment records do contain findings of an acquired psychiatric disorder. For example, outpatient treatment records dated in May 2015 include findings of anxiety disorder with features of PTSD and major depressive disorder (MDD). Additionally, outpatient treatment records dated in September 2016 indicate the Veteran does have PTSD as a result of military sexual trauma.

In short, there is competent medical evidence diagnosing PTSD related to the Veteran's credible account of in-service personal assault. Consequently, the Board conclude service connection is warranted for PTSD.

The Board acknowledges that the medical records show diagnoses of other psychiatric disorders such as depressive disorder and anxiety disorder, and the law does not preclude establishing service connection for a separately diagnosed acquired psychiatric disorder. See Clemons v. Shinseki, 23 Vet. App. 1 (2009). However, the Board finds that the grant of service connection for PTSD encompasses all of the Veteran's psychiatric symptomatology during the pendency of this case, particularly in light of the May 2015 treatment records which indicate the symptoms of anxiety, PTSD, and depression are interconnected.


ORDER

Service connection for a dental disorder for compensation purposes is denied.

Service connection for GERD is granted.

Service connection for poor vision is denied.

Service connection for an unknown illness, claimed as due to drinking contaminated water, is denied.

Service connection for high blood pressure/hypertension is granted.

Service connection for right testicle pain, to include as secondary to service-connected low back disorder, is denied.

Service connection for PTSD is granted.



REMAND

The Board observes that the Veteran's claims of service connection for both shoulders, the left arm, left chest, and both legs were denied below on the basis there was no diagnosed disability for his complaints of pain in these joints. For example, the November 2016 VA examination stated there was no objective evidence of bilateral shoulder condition/pain, bilateral leg pain, or left arm condition. It was also indicated that the left chest pain had resolved.

The Board acknowledges that the Court has previously held that pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted. Sanchez-Benitez v. West, 13 Vet. App. 282 (1999), appeal dismissed in part, and vacated and remanded in part sub nom. Sanchez-Benitez v. Principi, 259 F.3d 1356 (Fed. Cir. 2001). However, the Federal Circuit has recently found that pain alone can be a disability. Specifically, in Saunders v. Wilkie, No 2017-1466 (Fed. Cir. Apr. 3, 2018) held that the term "disability" as used in 38 U.S.C. 1110 "refers to the functional impairment of earning capacity, not the underlying cause of said disability," and held that "pain alone can serve as a functional impairment and therefore qualify as a disability." In other words, where pain alone results in functional impairment, even if there is no identified underlying diagnosis, it can constitute a disability. The Federal Circuit did emphasize that they were not holding a veteran could demonstrate service connection "simply by asserting subjective pain.... To establish the presence of a disability, the veteran will need to show that her pain reaches the level of functional impairment of earning capacity." In other words, subjective pain in and of itself will not establish a current disability. Consideration should be given to the impact, or lack thereof, from pain, focusing on evidence of functional limitation caused by pain.

The November 2016 VA examination was conducted prior to the Federal Circuit's holding in Saunders, supra; as was the last adjudication below via a December 2017 Supplemental Statement of the Case (SSOC). As such, the Board is concerned the Veteran was not accorded an examination that is consistent with the current legal criteria, nor had the opportunity to address his claim in light of the Federal Circuit's holding. Consequently, the Board concludes these claims should be remanded to accord the Veteran a new examination that does take into account the criteria set forth in Saunders, and to provide the Veteran the opportunity to present evidence as a result of that holding.

Accordingly, the case is REMANDED for the following action:

1. Associate any pertinent, outstanding records with the claims folder.

2. Notify the Veteran that he may submit lay statements from himself and from other individuals who have first-hand knowledge, and/or were contemporaneously informed of his in-service and post-service symptomatology of the shoulders, left arm, left chest, and legs. The Veteran should be provided an appropriate amount of time to submit this lay evidence.

3. After obtaining any additional records to the extent possible, the Veteran should be afforded an examination to evaluate the nature and etiology of his claimed disabilities manifested by shoulder pain, left arm pain, left chest pain, and leg pain. The claims folder should be made available to the examiner for review before the examination.

Following evaluation of the Veteran, the examiner should state whether the Veteran has a disability manifested by pain in the shoulders, left arm, left chest, and/or legs. The examiner should specifically indicate whether the Veteran has functional impairment of earning capacity of the claimed joints, in accord with the holding of Saunders v. Wilkie, No 2017-1466 (Fed. Cir. Apr. 3, 2018).

For any such disability found to be present, the examiner should express an opinion as to whether it is at least as likely as not it was incurred in or otherwise the result of the Veteran's active service to include the 2001 skiing accident that was noted, in part, on a May 2002 medical assessment. 

If the examiner concludes any such disability is not directly related to service, then the examiner should express an opinion as to whether it is at least as likely as not it was caused or aggravated by the low back disorder. By aggravation, the Board means a permanent increase in severity that is beyond natural progression.

A complete rationale for any opinion expressed must be provided. An examiner's report that he or she cannot provide an opinion without resort to speculation is inadequate unless the examiner provides a rationale for that statement. See Jones v. Shinseki, 23 Vet. App. 382 (2010). As such, if the examiner is unable to offer an opinion, it is essential that the examiner provide a rationale for the conclusion that an opinion could not be provided without resort to speculation, together with a statement as to whether there is additional evidence that could enable an opinion to be provided or whether the inability to provide the opinion is based on the limits of medical knowledge.

4. After completing any additional development deemed necessary, readjudicate the issues on appeal in light of any additional evidence added to the records assembled for appellate review. If the benefits requested on appeal are not granted to the Veteran's satisfaction, the Veteran and his representative should be furnished a Supplemental Statement of the Case (SSOC), which addresses all of the evidence obtained after the issuance of the last SSOC in December 2017, and provides an opportunity to respond. 

The case should then be returned to the Board for further appellate consideration, if in order. By this remand, the Board intimates no opinion as to any final outcome warranted.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).





______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs