Ralph P. BURRIS, Appellant,

v.

Anthony J. PRINCIPI, Secretary of
Veterans Affairs, Appellee.

No. 00–1770.

United States Court of Appeals
for Veterans Claims.

Dec. 17, 2001.

Tim S. McClain, General Counsel; Ron Garvin, Assistant General Counsel; Michael A. Leonard, Deputy Assistant General Counsel; and William L. Puchnick, all of Washington, DC, were on the brief, for the appellee.

Before KRAMER, Chief Judge, and FARLEY and STEINBERG, Judges.

STEINBERG, Judge, filed the opinion of the Court. KRAMER, Chief Judge, and FARLEY, Judge, each filed a concurring opinion.

STEINBERG, Judge:

The pro se appellant seeks review of a June 5, 2000, decision of the Board of Veterans' Appeals (Board or BVA) that denied his claim for Department of Veterans Affairs (VA) accrued benefits in excess of $7,165.01, representing the expenses he had paid for the burial of his mother, the widow of a veteran. The Board found that, because the appellant is not the "child" of the deceased veteran for purposes of 38 U.S.C. § 5121, "[t]here is no legal basis to award the appellant an increased amount of accrued benefits". Record (R.) at 3; *see also* 38 U.S.C. § 101(4)(A). This appeal is timely, and the Court has jurisdiction under 38 U.S.C. §§ 7252(a) and 7266(a). Pursuant to this Court's Internal Operating Procedures, proceedings were stayed for 30 days on June 28, 2001, in order to permit the appellant additional time to seek representation. None has filed an appearance. For the reasons set forth below, the Court will affirm the June 2000 decision of the Board.

## I. Background

The veteran, Robert D. Burris, the appellant's father, served honorably in the

U.S. Army from September 1917 to May 1919. R. at 78. According to statements submitted by the appellant, a VA regional office (RO) "denied entitlement to [VA] service connection benefits" for the veteran in 1931 (R. at 224) and in 1958 (R. at 187). The veteran died on February 9, 1962, as a result of a cerebrovascular accident and carcinoma of the skin. R. at 42, 224. In August 1993, the veteran's widow, Addie Burris, filed a claim for VA service connection for the cause of her husband's death secondary to mustard-gas exposure. R. at 53–54. The VARO, reasoning that there was no indication that the disease causing the veteran's death began during service or that the veteran's lesions originated at the site of burn scars from exposure to mustard gas, denied the claim in September 1994. R. at 81.

Mrs. Burris, asserting that the veteran's death resulted from treatment at VA medical facilities, filed a timely Notice of Disagreement that included a claim for dependency and indemnity compensation (DIC) pursuant to 38 U.S.C. § 1151. R. at 84–86. Specifically, she stated that during the veteran's hospitalization at a VA hospital he was subjected to medical experiments that led to his death, despite the fact that "[t]he cure rate ... [for his disease was] 95[%], when properly treated". *Ibid.* In a Statement of the Case (SOC), the VARO concluded that "there is no evidence of record to show that the veteran ever claimed a history [of] mustard[-]gas exposure during his lifetime" and "VA examinations in March 1931, June 1952, and August 1952 are negative for evidence of burn scars or any indication of prior mustard[-]gas exposure". R. at 97. In a November 1995 VA Form 9 Appeal to the BVA, Mrs. Burris claimed that "either the mustard[-]gas exposure prevented normal treatment and cure of the skin cancer ... or ... VA did not provide the proper care and treatment". Supplemental R. at 1–2.

The RO denied Mrs. Burris' DIC claim in January 1996 and, in March 1996, issued an SOC that again found insufficient evidence to establish service connection for the veteran's cause of death. R. at 133–35, 143–46. Mrs. Burris died at age 96 in July 1996. R. at 154–55. That same month, the RO informed the appellant, Ralph P. Burris, the son of Mr. and Mrs. Robert Burris, that he could claim accrued benefits based upon the appeal pending at his mother's death. R. at 162–63.

In a July 22, 1996, letter to the RO, the appellant stated that, prior to her death, his mother had been seeking "a 'STRAIGHT ANSWER' as to why VA treatment led to [his] father's death" in light of the high cure rate for his carcinoma, as well as whether "the exposure to mustard gas in World War I hamper[ed] this treatment". R. at 165–66. The appellant requested a "signed statement from the medical doctor on the adjudication board, explaining ... how he concluded that [the appellant's] father ... [had] received proper treatment". *Ibid.* Finally, the appellant noted: "Until the questions from my mother to the BVA are answered, the case is still open." R. at 166. The RO determined in April 1997 that it was "highly probable" that the veteran was exposed to mustard gas during his World War I service and thus "conceded" mustard-gas exposure. R. at 173, 175. The appellant was informed of VA's concession in June 1997 and was again advised of his right to claim certain accrued benefits (R. at 175); in July 1997 he filed an application for reimbursement of the burial expenses for his mother in the amount of $7,165.01 (R. at 177–83). In March 1998, he filed an amendment to his claim; he stated that he wished to include a claim for accrued benefits pursuant to 38 C.F.R. § 3.105, which allows revision of final RO decisions based upon clear and unmistakable error (CUE).

R. at 187–88. The appellant claimed that (1) VA had erred in not granting service connection to his father in 1958 (the date of his father's diagnosis) based on the chronic effects from in-service exposure to mustard gas and (2) VA had not fulfilled its duty to assist his father in the development of that claim. *Ibid.*

In June 1998, the RO granted service connection for the cause of the veteran's death secondary to mustard-gas exposure and granted entitlement to accrued benefits pursuant to 38 U.S.C. §§ 5121 and 5310. R. at 190–92. In its decision, the RO noted that, although the appellant asserted that the RO had erred in failing to award his father service connection in October 1958 when his father's carcinoma was diagnosed, accrued-benefits awards were limited, at the time of its decision, by 38 U.S.C. § 5121 to monthly benefits for a maximum of one year prior to the veteran's death; the RO concluded that no basis therefore existed under the law to award benefits payable from 1958. R. at 191. In a June 1998 letter, the RO informed the appellant that he would be paid $7,165.01 from amounts due and unpaid to his mother at the time of her death, an amount representing the expenses that he had paid for her burial. R. at 198. The appellant returned the VA check marking it "void" and "unacceptable to amended [VA] claim dated 3–30–98". R. at 194.

The appellant timely appealed to the Board. R. at 201–02, 221–22. An April 1999 statement from the appellant's representative to the Board reflected that the appellant was asserting CUE in a March 25, 1931, RO decision that had denied the veteran's claim for service-connected compensation and in a March 9, 1962, RO decision that had denied Mrs. Burris' claim for service connection for the cause of the veteran's death. R. at 224–27. Through his representative, the appellant asserted that, when the rating decisions denying VA service connection in 1931 and DIC in 1962 were rendered, VA "had access to the same government records ... used to grant service connection for [the] cause of [the veteran's] death on June 15, 1999". R. at 227.

In the June 5, 2000, BVA decision here on appeal, the Board denied an increase in the accrued-benefits award on the ground that there was no authority in the law for an award beyond the last-sickness-and-burial expenses that had been paid to the appellant in the amount of $7,165.01. R. at 3, 7. Specifically, the Board determined that the adult son of the veteran was not a "child" as defined by 38 C.F.R. § 3.57(a) and that the appellant thus was not eligible as a matter of law to receive DIC benefits from an award of service connection for the cause of the veteran's death, because, pursuant to 38 U.S.C. § 1310, only surviving spouses and children, as defined by law and VA regulation, may receive DIC benefits. R. at 3–6. Finally, the Board concluded that, because the appellant was not eligible for DIC benefits, any question of an effective date for entitlement to service connection for the cause of the veteran's death was irrelevant. R. at 6. In his informal reply brief filed in this Court on May 15, 2001, the appellant states that he is "70 years old and served [his] country in the Korean War". Reply Brief (Br.) at 1.

## II. Analysis

The appellant asserts two essential theories in support of his claim for additional VA benefits: Accrued benefits and DIC. As to accrued benefits, a veteran's disability claim under chapter 11 of title 38 does not survive the death of the veteran. *See Johnson v. West,* 11 Vet. App. 225, 227 (1998); *Landicho v. Brown,* 7 Vet.App. 42, 47 (1994); *see also Zevalkink v. Brown,* 102 F.3d 1236, 1243–44 (Fed.Cir.1996) (expressly agreeing with

this Court's *Landicho* holding). A qualified survivor can carry on **the deceased veteran's claim** for benefits only pursuant to the accrued-benefits provisions of 38 U.S.C. § 5121(a). *See Peters v. Brown,* 7 Vet.App. 342, 343 (1994) (per curiam order) (citing *Landicho,* 7 Vet.App. at 47–48). Accrued benefits are derivative benefits, in that the claimant stands in the place of a veteran or other survivor to receive "periodic monetary benefits ... under laws administered by the Secretary to which an individual was entitled at death under existing ratings or decisions, or those based on evidence in the file at date of death ... and due and unpaid for a period *not to exceed two years*". 38 U.S.C. § 5121(a) (emphasis added). Section 5121(a) provides, in pertinent part, for payment of accrued benefits:

(2) Upon the death of a veteran, to the living person first listed below:

(A) The veteran's spouse;

(B) The veteran's children (in equal shares);

(C) The veteran's dependent parents (in equal shares);

(3) Upon the death of a surviving spouse or remarried surviving spouse, to the children of the deceased veteran;

(4) Upon the death of a child, to the surviving children of the veteran who are entitled to death compensation, dependency and indemnity compensation, or death pension; and

(5) In all other cases, only so much of the accrued benefits may be paid as may be necessary to reimburse the person who bore the expense of last sickness and burial.

38 U.S.C. § 5121(a).

As to a survivor's entitlement to receive benefits in his or her own right, when a veteran dies from a service-connected disability, VA will pay DIC to the veteran's "surviving spouse, children, and parents". 38 U.S.C. § 1310(a). A veteran's surviving spouse and children may also qualify for DIC under 38 U.S.C. § 1318 if it is shown that the veteran would have been entitled to a 100% disability rating for the 10 years immediately preceding his or her death, inter alia, but for CUE in a prior final rating decision. *See Damrel v. Brown,* 6 Vet.App. 242, 245 (1994); 38 C.F.R. § 3.22(b)(3) (2000).

Hence, under both the accrued-benefits and DIC-benefits theories, the key question is whether the appellant qualifies as a "child" under VA law and regulation. We conclude that he does not. In pertinent part, 38 U.S.C. § 101(4)(A) provides as to the definition of child:

The term "child" means ... a person who is unmarried and—

(i) who is under the age of eighteen years;

(ii) who, before attaining the age of eighteen years, became permanently incapable of self-support; or

(iii) who, after attaining the age of eighteen years and until completion of education or training (but not after attaining the age of twenty-three years), is pursuing a course of instruction at an approved educational institution.

38 U.S.C. § 101(4)(A); *see also* 38 C.F.R. § 3.57(a) (to same effect). In the instant case, the Board found that the appellant did not qualify as a "child" under 38 U.S.C. § 101(4)(A) and 38 C.F.R. § 3.57(a) and therefore concluded that there was no legal basis for his receipt of DIC or accrued benefits beyond what was "necessary to reimburse the person who bore the expense of last sickness and burial". 38 U.S.C. § 5121(a)(5).

Findings of fact by the BVA are entitled to judicial deference by this Court and are to be set aside only if clearly erroneous. *See Lovelace v. Derwinski,* 1 Vet.App. 73,

74 (1990); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). A finding is clearly erroneous only when " 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Gilbert, supra* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Furthermore, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them". *Gilbert*, 1 Vet.App. at 53.

The Court takes judicial notice of the appellant's age as conceded in his reply brief ("I'm 70 years old" (Reply Br. at 1)). *See Smith (Brady) v. Derwinski*, 1 Vet. App. 235, 238 (1991) (finding that "Courts may take judicial notice of *facts* not subject to reasonable dispute" (citing FED. R.EVID. 201(b) (1990))). There is no basis for concluding that the Board made a mistake in determining that, under the clear statutory and regulatory language, the appellant is not the "child" of the veteran or his widow, because the law excludes from the category of "child" anyone who is more than 23 years of age. Therefore, the Court holds that the Board's finding with respect to this issue is not clearly erroneous. *See Lovelace* and *Gilbert*, both *supra*. Thus, there is no legal basis for the appellant to be paid DIC in any amount or accrued benefits in excess of the amount he incurred ($7,165.01) as last-sickness-and-burial expenses for his mother. Further, although a claimant *eligible for* DIC benefits may demonstrate entitlement to an award based upon a finding of CUE, this appellant is not eligible for additional benefits because he does not satisfy the statutory definition of a "child". Therefore, even if the Court were to find CUE in the 1931 and/or 1962 RO decisions, such a finding would be of no benefit to the appellant because, by virtue of his age, he may not be awarded DIC benefits, on the basis of CUE or on any other basis, under the law.

■ The delays throughout the processing of Mrs. Burris' claim are indeed unfortunate, and the appellant's frustration is quite understandable. Despite the panel's sympathy for the appellant, this Court is simply without authority to award benefits not contemplated by title 38 of the United States Code. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (stating that court's jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law). The appellant asks this Court to "punish[ ] . . . those in the [RO] responsible for delaying [his] mother's claim until after her death" by terminating the retirement benefits of the individuals responsible for the delay. Appellant's Informal Br. at 2. However, this Court does not have the authority to order such remedies. *See Moffitt v. Brown*, 10 Vet.App. 214, 225 (1997) (providing that "this Court is not a court of equity and cannot provide equitable relief" (citing *Harvey v. Brown*, 6 Vet.App. 416, 425 (1994))). The Court has no authority to impose punishment other than to hold in contempt persons actually appearing before it or involved in committing acts pertinent to the litigation while it is before the Court. *See* 38 U.S.C. § 7265(a)(1); *Jones (Joseph) v. Derwinski*, 1 Vet.App. 596, 607–08 (1991). This Court's contempt powers, therefore, could not extend to the conduct challenged by the appellant. The appellant also seeks, in addition to accrued benefits, "penalty and interest as reparations against [VA]". Informal Br. at 3. The Court is similarly without authority to grant such relief. *See Smith (Claudus) v. Gober*, 14 Vet.App. 227, 230–31 (2000) (re-

fusing "to infer from the general language of [38 U.S.C. § ] 503[, *infra*,] that Congress has expressly consented to a waiver of sovereign immunity allowing the payment of interest"). *But see* 38 U.S.C. § 503 (authorizing Secretary to grant relief that is equitable in nature, including granting of "payment of moneys to any person whom Secretary determines is equitably entitled to such moneys"); 38 C.F.R. § 2.7 (2000); *Zimick v. West*, 11 Vet.App. 45, 50–51 (1998) (explaining that Secretary's authority to grant equitable relief under section 503 is wholly within Secretary's discretion and that Court lacks jurisdiction to review exercise of Secretary's equity discretion).

While this appeal was pending before this Court, Congress enacted the Veterans Claims Assistance Act of 2000, Pub.L. No. 106–475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA). "Because neither party has argued ... that application of the VCAA would be beneficial to the appeal, the Court does not express any view in the first instance regarding the application of the VCAA to this appeal." *Tellex v. Principi*, 15 Vet.App. 233, 240 (2001); *see also Maxson v. Principi*, 15 Vet.App. 241 (2001) (citing *Tellex*, *supra*); *cf. Williams (Shirley) v. Principi*, 15 Vet. App. 189 (2001) (en banc) (not addressing VCAA although VCAA was enacted while claim involved was pending).

## III.  Conclusion

Upon consideration of the foregoing, the June 5, 2000, decision of the Board is affirmed.

AFFIRMED.

KRAMER, Chief Judge, concurring:

I concur in the affirmance of the June 5, 2000, Board of Veterans' Appeals (Board) decision. I write separately, however, because I believe that it would be helpful to summarize the reasons why the pro se appellant is not entitled to a retroactive award of benefits. First, to the extent that the appellant is seeking a retroactive award of benefits in excess of two years prior to the veteran's death, the veteran's disability compensation claim "die[s] with him." *Landicho v. Brown*, 7 Vet.App. 42, 52 (1994). Further, because accrued benefits are limited by statute to two years, there is no legal provision for such a general retroactive award to the appellant. *See* 38 U.S.C. § 5121(a). Next, to the extent that the appellant is seeking two years' worth of accrued benefits, because, as the Board found, the appellant is not a child, he does not meet the statutory requirements to receive such an award. Record at 6; *see* 38 U.S.C. §§ 101(4)(A) (defining term "child"), 5121(a)(3) (upon death of veteran's surviving spouse, accrued benefits payable to veteran's children); 38 C.F.R. § 3.57 (2001) (defining term "child"). Finally, to the extent that the appellant is seeking dependency and indemnity compensation (DIC), although certain survivors could be entitled to DIC because the veteran's death was service connected, the appellant is not so entitled to DIC because he is not a child. *See* 38 U.S.C. §§ 1310(a) (DIC payable, inter alia, to deceased veteran's children), 1318(a) (DIC payable, inter alia, to deceased veteran's children). Thus, the appellant is only entitled, under the accrued benefits statute, to the burial expenses that he incurred for his mother. *See* 38 U.S.C. § 5121(a)(5).

FARLEY, Judge, concurring:

I concur in the Court's decision to affirm the BVA decision. However, I do not join in the majority's refusal to consider or address the applicability of the Veterans Claims Assistance Act of 2000, Pub.L. No. 106–475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA). I agree that this Court is not

*required* to specifically address the potential applicability of the VCAA in every case, particularly when the parties have not raised the issue. *See Williams v. Principi,* 15 Vet.App. 189 (2001). However, where, as here, the law and not the evidence is dispositive, the VCAA clearly can have no applicability. *See Sabonis v. Brown,* 6 Vet.App. 426 (1994); *cf. Smith v. Gober,* 14 Vet.App. 227, 231–32 (2000) (holding that VCAA did not affect the veteran's claim for payment of interest on past-due benefits). In such cases, I believe it is appropriate for the Court to so state. *See, e.g., Livesay v. Principi,* 15 Vet.App. 165 (2001); *Dela Cruz v. Principi,* 15 Vet.App. 143 (2001); *Smith, supra.* Moreover, as our case law develops in this area, it would be useful to the veterans bar to have precedential opinions providing guidance on this Court's interpretation of the VCAA.