# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-0541

MARLESA D. LYNCH, APPELLANT,

AND

CYNTHIA M. MARTINEZ, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 21, 2018                                    Decided October 23, 2018)

*Daniel G. Krasnegor*, of Charlottesville, Virginia, with whom *Erin E. Ralston*, of Glen Allen, Virginia; and *Krystle D. Waldron*, of Richmond, Virginia, were on the brief, for the appellants.

*Angela-Marie C. Green*, with whom *Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Edward V. Cassidy, Jr.*, Deputy Chief Counsel, all of Washington, D.C., were on the brief, for the appellee.[1]

Before SCHOELEN, ALLEN, and MEREDITH, *Judges*.

SCHOELEN, *Judge*, filed the opinion of the Court. ALLEN, *Judge*, filed an opinion concurring in part and dissenting in part.

SCHOELEN, *Judge*: The appellants, Marlesa D. Lynch and Cynthia M. Martinez, appeal through counsel two January 29, 2016, Board of Veterans' Appeals (Board) decisions that denied them entitlement to recognition as the children of deceased veteran David Philpot for eligibility for dependency and indemnity compensation (DIC) benefits.[2] Record (R.) at 2-18. On

---

[1] Meghan Flanz was Interim General Counsel for the appellee when his initial brief was submitted to the Court, but James M. Byrne has since been appointed General Counsel and was on the supplemental brief for the appellee.

[2] Although docketed separately, the appellants' claims were consolidated under the instant docket number in the interest of judicial economy by an order of the Clerk of the Court (Clerk) granting the Secretary's unopposed motion to consolidate. *See* U.S. VET. APP. R. 45(g). The Clerk issued the order on June 17, 2016. *Lynch v. McDonald*,

February 28, 2018, the Court issued a single-judge decision affirming the January 2016 Board decisions. *See Lynch v. Shulkin*, No. 16-0541, 2018 WL 1081410 (U.S. Vet. App. Feb. 28, 2018) (mem. dec.). On March 21, 2018, the appellants filed a motion for single-judge reconsideration or, in the alternative, panel review. This matter was submitted for panel consideration and oral argument was held. The Court will withdraw the February 28, 2018, memorandum decision and issue this decision in its stead. Because the record did not reasonably raise the theory that a pending claim for DIC was filed on behalf of the appellants while they were considered "children," the Court will affirm the Board's January 2016 decisions.

## I. BACKGROUND

The appellants are sisters who allege that they are the natural children of veteran David Philpot.[3] *See* R. at 225, 254. Mr. Philpot was killed on February 28, 1969, while he was on active duty. *See* R. at 329, 332. At the time of his death, the appellants were minor children. *See* R. at 237, 242.

In March 1969, 1 month after the veteran's death, the Office of Servicemen's Group Life Insurance[4] (SGLI) contacted the veteran's parents to inform them that the veteran was insured under the SGLI program, but had not designated a beneficiary for his policy. R. at 49; *see also* R. at 47 (veteran's SGLI election form with no beneficiary designated). Because the veteran's parents did not identify any other beneficiaries, they were awarded his SGLI benefits, a lump sum of $10,000. *See* R. at 293 (footnotes in DD Form 1300 identifying the veteran's father as "[a]dult next of kin" and "[b]eneficiary for gratuity pay in event there is no surviving wife or child").

In April 1969, 2 months after the veteran's death, VA received the veteran's parents' application for DIC on VA Form 21-535, APPLICATION FOR DEPENDENCY AND INDEMNITY COMPENSATION BY PARENT(S). R. at 340-42. In area 21, which asked about the veteran's surviving dependents, the veteran's parents checked the box indicating that the veteran

---

U.S. Vet. App. No. 16-0541 (unpublished Clerk's order, June 17, 2016) (consolidating case with *Martinez v. McDonald*, U.S. Vet. App. No. 16-0542).

[3] Mr. Philpot never married. *See* R. at 288. The Secretary asserts that paternity has not been established. Secretary's Brief (Br.) at 7 n.1; *see* 38 U.S.C. § 101(4)(A)(iii). The appellants dispute that contention. *See*, *e.g.*, Appellants' Supplemental (Suppl.) Br. at 5-6. Because the Court holds that the Board did not err in determining, on other grounds, that the appellants were not eligible claimants, *see part III.B below*, it need not reach the question of paternity.

[4] This is now Servicemembers' Group Life Insurance.

had neither a widow nor any children under 18 years of age. R. at 340. They left blank area 22, which requested the names and address of any surviving children. *Id*. The following month, the veteran's parents' DIC claim was denied because their income exceeded the allowable threshold; they did not appeal that decision. R. at 44, 282.

In August 2010, the appellants filed claims seeking DIC. R. at 225-32 (Martinez claim), 254-61 (Lynch claim). The appellants conceded that the veteran's parents "did not notify the VA that the deceased veteran had two dependent children" in connection with either the parents' DIC application or their claim for SGLI benefits. R. at 184. Rather, the appellants asserted that the veteran's parents – their grandparents – fraudulently and intentionally failed to disclose that the veteran had children so that they could claim any available benefits for themselves. R. at 118, 120. In November 2015, the appellants testified before a Board member that the veteran's parents had the opportunity to inform VA that the veteran had dependent children but declined to do so, even though the appellants were living with the veteran's parents when the veteran's parents received SGLI benefits and filed the DIC claim. R. at 52-55.

In the decisions on appeal, the Board determined that the appellants first filed claims seeking DIC in 2010, when they no longer met the statutory and regulatory definitions of "children" for such purposes. R. at 5, 15. The Board found, therefore, that the appellants were not eligible claimants, and denied their claims as a matter of law. R. at 5-6, 15-16. The Board further found that, because the law was dispositive in these matters, any duty-to-assist errors would be harmless. R. at 4, 14.

## II. THE PARTIES' ARGUMENTS

The appellants do not dispute that they first filed claims seeking DIC in 2010, by which time neither appellant met the statutory and regulatory definitions of "child" for VA purposes. *See* Appellants' Br. at 5 (stating that the appellants did not learn about the availability of DIC until they were adults); *see also* R. at 118 (Martinez VA Form 9), 120 (Lynch VA Form 9); 38 U.S.C. § 101(4)(A); 38 C.F.R. § 3.57 (2018). Nonetheless, they argue that the Board prematurely determined that their claims must be denied as a matter of law without addressing pertinent and unresolved matters. *See*, *e.g*., Appellants' Br. at 14. Specifically, they assert that the record reasonably raised theories that the 1969 application filed by the veteran's parents was either an incomplete or defective claim, which has remained pending since 1969 because VA failed to notify

the applicants of the evidence necessary to complete their application, *see id*. at 8-12; 38 C.F.R. § 3.109(a)(1) (1969), or an informal claim filed by the veteran's parents on behalf of the appellants, which has remained pending because VA never forwarded the appropriate official application form to the veteran's parents. *See* Appellants' Br. at 12-14; 38 C.F.R. § 3.155(a) (1969). They assert that, under these theories, their actual dates of claim could be April 1969, when they were still "children" as defined by 38 U.S.C. § 101(4)(A). Appellants' Br. at 11-14. Because they could be entitled to past due DIC benefits for the period when they were eligible "children," they contend, the Board's statement of reasons or bases for its decision was inadequate and the Board's premature denial was prejudicial error. *Id*. at 6-8, 14. They further assert that, regardless of whether the record reasonably raised these theories of entitlement, VA's duty to assist nonetheless requires that the matter be remanded for additional development to ensure a complete record. *Id*. at 15-17.

The Secretary agrees that, if an unadjudicated claim was filed on the appellants' behalf in April 1969, i.e., within 1 year of the veteran's death, the appellants would, today, be eligible claimants. *See* Secretary's Suppl. Br. at 2-3. However, he disputes the appellants' contention that the record below reasonably raised theories under which the April 1969 claim could or should be construed as a pending claim filed on the appellants' behalf, and contends that the Board was not required to discuss those theories. Secretary's Br. at 9. Regarding the appellants' assertion that VA failed to satisfy its duty to assist, the Secretary argues that, "any such error is not prejudicial, because it would result in no additional benefit flowing to the [a]ppellants in this case." *Id*. at 19 (citing 38 U.S.C. § 7261(b)(2)).

### III. ANALYSIS

This case requires the Court to resolve two primary questions. First, the Court must determine whether the appellants, who are no longer "children" as defined by 38 U.S.C. § 101(4)(A), are nonetheless potentially eligible DIC claimants as the purported children of deceased veteran David Philpot. The parties apparently agree that VA should apply 38 C.F.R. § 3.400(c)(4) (2018) to determine the appropriate date on which to assess whether a person qualifies as a "child" for the purpose of determining eligibility for DIC. *See* Appellants' Suppl. Br. at 2-4; Secretary's Suppl. Br. at 1-3. However, the Court has not yet considered this issue in a precedential opinion. If the appellants cannot under any legal or factual theory show that they were

4

"children" on the appropriate date, they are not eligible claimants, and the Court need not consider the matter further. *See* 38 U.S.C. §§ 1310, 1313.

If the Court determines that the appellants are potentially eligible claimants because they could have satisfied the definition of "child," the Court must next determine whether the record in this case reasonably raised the theory that there is a pending claim filed on the appellants' behalf while they were still "children."

A. Appropriate Date To Assess Whether a Person Qualifies as a "Child"

The Court reviews VA's interpretation of statutes and regulations de novo. *See Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003) ("[I]nterpretation of a statute or regulation is a question of law. . . ."); *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (stating that the Court reviews "questions of law de novo without any deference to the [Board's] conclusions of law"). The Court must first analyze the language of the authorizing statute and determine "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). If, employing the traditional tools of statutory construction, the Court finds that the "intent of Congress is clear, that is the end of the matter; for the [C]ourt, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. On the other hand, if the Court concludes that "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. Here, as we will explain, the Agency's answer is contained in regulations.

DIC is payable to eligible beneficiaries as defined by 38 U.S.C. § 1310(a). When there is no surviving spouse, VA death benefits may be paid to eligible children. 38 U.S.C. § 1313(a). For purposes of determining eligibility for this benefit, a "child" must be unmarried and must (1) be under the age of 18, (2) have become permanently incapable of self-support before reaching the age of 18, or (3) be between the ages of 18 and 23 and pursuing a course of instruction at an approved educational institution. 38 U.S.C. § 101(4)(A); 38 C.F.R. § 3.57(a)(1) (2018); *see Sucic v. Shulkin*, 29 Vet.App. 121, 126 (2017) (per curiam order) (holding that the definition of "child" in 38 U.S.C. § 101(4)(A) controls in determining benefit eligibility); *Burris v. Principi*, 15 Vet.App. 348, 352-53 (2001). However, the statutory provision, 38 U.S.C. § 1313, is silent as to *when* to evaluate whether a claimant is a "child," that is, whether VA should look to the date the application for DIC benefits is filed, the date that claim is initially adjudicated, or some other date.

Because there is a gap in the statute, the Court must now turn to step two of the *Chevron* analysis, "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Here, the Secretary argues that the effective-date provisions of 38 C.F.R. § 3.400(c)(4) fill that gap. Secretary's Suppl. Br. at 1-2. Under that regulatory provision, the effective date for DIC awarded to "children" is the "[f]irst day of the month in which entitlement arose if [the] claim is received within 1 year after the date of entitlement; otherwise, date of receipt of claim." 38 C.F.R. § 3.400(c)(4). Therefore, the Secretary explains, when a claim is received within 1 year after the date of entitlement, for the purpose of establishing eligibility for DIC benefits, VA should look to the date entitlement arose as the appropriate date upon which to assess whether a claimant is a "child."[5] *See* Secretary's Suppl. Br. at 2. Otherwise, the "child" assessment date would be the date the claim was received. *See id*.

In other words, when a claim is filed within 1 year of the date entitlement arose, 38 C.F.R. § 3.400(c)(4) provides a limited exception to the general rule, articulated in 38 C.F.R. § 3.400, that the effective date of a DIC award will be the latter of the date the claim was received or the date entitlement arose. However, where a claim is received more than 1 year after the date entitlement arose, the exception does not apply and the effective date for DIC – as well as the date upon which to assess whether a claimant was a "child," under the Secretary's regulation – would be the date of the DIC claim. 38 C.F.R. § 3.400; *see* 38 U.S.C. § 5110(a), (e)(1). This view of determining an effective date comports with the general scheme of effective dates. For example, 38 C.F.R. § 3.400(o)(1) states the general rule that the effective date for increased disability ratings will be the latter of the date the claim was received or the date entitlement arose, but § 3.400(o)(2) provides a limited exception that the effective date of an increased rating will be the "[e]arliest date as of which it is factually ascertainable," that is, the date entitlement arose, when a claim is received within 1 year of that date. *See* 38 U.S.C. § 5110(b)(3). Therefore, the Court finds the Secretary's regulation presents a permissible construction of the statute Congress enacted. *See McCarroll v. McDonald*, 28 Vet.App. 267, 271 (2016) (en banc) ("Statutes and regulations 'must be considered as a whole and in the context of the surrounding statutory [and regulatory] scheme.'" (quoting *Gazelle v. McDonald*, 27 Vet.App. 461, 464 (2016))).

---

[5] The Secretary explained that "[t]here are two logical dates upon which entitlement to DIC benefits may arise: the date of death of the veteran, or the date the child in question was born, whichever is later." Secretary's Suppl. Br. at 2.

The Secretary further notes that his interpretation regarding eligibility as a "child" for the purpose of DIC is "not inconsistent with" this Court's precedent on eligibility for the purpose of other death benefits, such as accrued benefits. Secretary's Suppl. Br. at 2-3. In *Sucic*, the Court held that, because "an accrued benefits determination is to be made 'upon the death of a veteran[,]' . . . . [a] child of a deceased veteran is therefore eligible for substitution only if he or she satisfies the definition of 38 U.S.C. § 101(4)(A) 'upon the death' of the veteran." 29 Vet.App. at 125-26 (quoting 38 U.S.C. § 5121(a)(2)) (accrued benefits shall be paid upon the veteran's death to the veteran's spouse, children (in equal shares), or dependent parents (in equal shares), in that order); *see also Nat'l Org. of Veterans Advocates, Inc.* (*NOVA*) *v. Sec'y of Veterans Affairs*, 809 F.3d 1359, 1362 (Fed. Cir. 2016) (observing that, "[b]ecause the status of a potential substitute is not static, eligibility to substitute can be conclusively determined only at the time of the claimant's death"). Further, in *Bailey v. O'Rourke*, this Court held that, because "eligibility for accrued benefits . . . is determined on the date the veteran died," a change in status (in that case the remarriage of the deceased veteran's spouse) "does not affect a pending claim for accrued benefits." 30 Vet.App. 54, 59 (2018). A claimant's status as a "child" under 38 U.S.C. § 101(4)(A) is similarly not static. Applying the logic used in *Sucic*, *NOVA*, and *Bailey* to claims filed within 1 year after the date entitlement arose, it is reasonable to look to the date entitlement arose (the date the veteran died or, in some circumstances, the claimant's birth) to determine whether a claimant is a "child" for the purpose of DIC eligibility. It is also reasonable that a later change in the claimant's "child" status would have no effect on a pending DIC claim filed while the claimant was still a "child."

In *Burris*, the Court held that the appellant, "by virtue of his age, . . . may not be awarded DIC benefits, on the basis of CUE or on any other basis, under the law," which on its face appears to forestall the Secretary's interpretation. 15 Vet.App. at 353. In that case, a veteran's adult child sought DIC when the veteran died. However, Mr. Burris's purported entitlement did not arise until the death of the veteran, at which point he was no longer a "child." *Compare id*. (taking judicial notice of Mr. Burris's then-current age), *with id*. at 350 (noting the veteran's date of death). Thus, the *Burris* Court's seemingly broad holding is narrowed by the facts, resulting in no period during which Mr. Burris was an eligible DIC claimant.

Because the regulation implementing the statute is a permissible construction of the law Congress enacted concerning the scheme for effective dates, as well as with this Court's precedent concerning death benefits, the Court concludes that the appropriate date on which to assess whether

a person qualifies as a "child" for the purpose of determining eligibility for DIC benefits is governed by 38 C.F.R. § 3.400(c)(4) and depends on when the claim was filed. For claims filed within 1 year after the date entitlement arose, whether a claimant is a "child" should be assessed on the date entitlement arose. For claims filed more than 1 year after the date entitlement arose, whether a claimant is a "child" should be assessed on the date the claim was received.

Applying the above analysis to the facts of this case, if a claim was filed on the appellants' behalf within 1 year of the veteran's death, the date of death is the appropriate date upon which to assess whether the appellants were "children," and their present age is not a bar to benefits. Otherwise, the appropriate "child" assessment date is the date the claim was received. Therefore, in this case, whether the appellants are eligible claimants depends on whether a claim was filed on their behalf within 1 year of the veteran's death or at some other point while they were still "children."

B. Reasonably Raised Theory of a Pending Claim

Because the Court has determined that the appellants could be eligible claimants if pending and unadjudicated claims were filed on their behalf while they were "children" for VA purposes, it must now consider whether the record reasonably raised such theory of entitlement.

The Board is required to consider theories of entitlement to benefits that are either raised by the claimant or reasonably raised by the record. *Robinson v. Peake*, 21 Vet.App. 545, 552 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). However, that obligation "does not require the Board to assume the impossible task of inventing and rejecting every conceivable argument in order to produce a valid decision." *Id.* at 553. "Where a fully developed record is presented to the Board with no evidentiary support for a particular theory of recovery, there is no reason for the Board to address or consider such a theory." *Robinson*, 557 F.3d at 1361; *see Shields v. Brown*, 8 Vet.App. 346, 349-50 (1995) (declining to find that an application for burial benefits put VA "on notice" that the appellant sought additional DIC benefits). Whether an issue is reasonably raised by the record is essentially a question of fact, subject to the "clearly erroneous" standard of review. *See* 38 U.S.C. § 7261(a)(4); *Robinson*, 21 Vet.App. at 553; *see also Barringer v. Peake*, 22 Vet.App. 242, 244 (2008).

The appellants argue that the record reasonably raised the theory that the 1969 DIC application filed by the veteran's parents was an incomplete, defective, or informal claim for benefits filed on their behalf that, when combined with the appellants' formal 2010 DIC claims,

renders the claim filed in 1969 – when they were "children" and eligible to receive DIC – pending. Appellants' Br. at 7-8. The appellants assert that this theory was raised by (1) appellant Lynch's Notice of Disagreement (NOD), in which she stated that the veteran's parents did not provide "'all of the correct information [and] facts'" to VA, Appellants' Reply Br. at 2 (quoting R. at 184); (2) the appellants' VA Forms 9, in which they stated that they are entitled to benefits "due to the nature of the situation at the time of death," R. at 118, 120; Oral Argument at 57:04-:27, *Lynch v. Wilkie*, U.S. Vet. App. No. 16-0541 (argued Aug. 21, 2018), http://www.uscourts.cavc.gov/ oral_arguments_audio.php (explaining that the VA Form 9 comments refer to fraud on the part of the veteran's parents); and (3) the appellants' testimony before a Board member that the 1969 application was "incorrectly completed." Oral Argument at 03:38-:55; *see*, *e.g*., R. at 55 (appellant Lynch's testimony that her grandparents were "dishonest to the system").

While the evidence cited may suggest that the 1969 application was not accurately completed, it does not necessarily follow that identifying inaccuracies in the 1969 application submitted by the veteran's parents reasonably raises the theory that the application should be considered filed on behalf of the appellants. Indeed, the same evidence cited above shows that the appellants consistently asserted below that the veteran's parents intentionally sought to deny the appellants the opportunity to seek DIC – in other words, that the 1969 DIC claim was *not* a claim on the appellants' behalf. For example, at the Board hearing, the appellants' representative acknowledged that, "due to [the appellants'] family situation, [DIC] benefits *were not sought on their behalf*." R. at 52 (emphasis added). The representative further stated that "there was a deliberate attempt by [the appellants'] grandparents" to deprive the appellants of benefits. R. at 71. Additionally, appellant Lynch stated in her NOD that the veteran's parents "didn't make the VA aware of any dependent children," R. at 184, and both appellants asserted on their VA Forms 9 that "[o]ur grandparents essentially committed fraud," because they "didn't [and] wouldn't report that the veteran had any surviving children," and "tried to utilize the VA benefits for themselves," R. at 118, 120. Thus, even under the most sympathetic of readings, there is no suggestion in the cited evidence that the 1969 claim filed by the veteran's parents, whether considered on its own or in conjunction with the appellants' 2010 claims, should be construed as a claim filed *on behalf of*

9

*the appellants* when they were "children" as defined by 38 U.S.C. § 101(4)(A).[6] Therefore, this theory was not reasonably raised before the Board.

In supplemental briefing, the appellants also asserted that the Board should have considered whether a formal DIC claim may be pending based on an application for Social Security Administration (SSA) survivor benefits in accordance with 38 U.S.C. § 5105(b). Appellants' Suppl. Br. at 7 n.1. This theory was not reasonably raised by the record either, as there is no evidence that anyone applied for SSA benefits on the appellants' behalf. *See* R. at 66 (Board hearing testimony that the appellants' mother went to an SSA office but was told she was ineligible). Consequently, the only claims before the Board were the appellants' 2010 claims. Because those claims were not filed within 1 year of the veteran's death, the date on which to assess whether the appellants were "children" was the date the 2010 claims were filed. *See* 38 C.F.R. § 3.400(c)(4). As there is no dispute that the appellants were not "children" in 2010, the Board's conclusion that they are not eligible DIC claimants as a matter of law is not erroneous, and the January 2016 Board decisions will be affirmed.

Finally, the appellants argue that "the Board's error was that it was not *required* to deny the appeal as a matter of law given that it was *permitted* to accept the application filed by the [appellants'] grandparents in 1969 to include the appellants." Appellants' Reply Br. at 1 (emphasis in original). They further argue that, because the 1969 application was not accurate as to whether the veteran had dependent children, and because that inaccuracy deprived the appellants of benefits for which they would otherwise have been eligible, "VA's non-adversarial system" authorizes VA to remedy any past error by "constru[ing] the parents' 1969 application for DIC as an informal application for the [appellants,] which remained pending until formal applications were submitted in 2010." Appellants' Suppl. Reply Br. at 8-9. However, the question before the Court is not whether appellants' theories of entitlement have merit, but whether the theories were reasonably raised before the Board such that the Board erred in not discussing them. *Robinson*, 21 Vet.App. at 553. As discussed above, although the record suggests that the 1969 application was inaccurate, it does not suggest that the 1969 application should have been considered as filed on the appellants' behalf. To the extent the appellants argue that the Board should nonetheless have considered such

---

[6] Despite our dissenting colleague's contentions, it is unclear how an application by parties working at odds with the appellants could ever be considered an application to which the appellants' more recent filings might relate, or that would allow VA to provide the relief sought.

theories "to fix what was obviously a tragic situation," Oral Argument at 8:25-:28, this argument lies in equity. *See Robinson*, 21 Vet.App. at 553 (Board is not required to invent and reject "every conceivable argument"). Although the Court is sympathetic to the appellants' circumstances and understands their frustration, the Court is not a court of equity and may not grant the equitable relief sought. *Holle v. McDonald*, 28 Vet.App. 112, 119 (2016) ("[T]his Court may not award equitable relief, no matter how compelling the facts."); *see Moffitt v. Brown*, 10 Vet.App. 214, 225 (1997); *Mason v. Brown*, 8 Vet.App. 44, 59 (1995); *Schleis v. Principi*, 3 Vet.App. 415, 418 (1992); *see also* 38 U.S.C. § 503(a) (the Secretary may award equitable relief).

## C. Did VA Have an Unmet "Duty To Assist"?

Alternatively, the appellants argue that, regardless of whether the evidence reasonably raised a theory of entitlement under which they are potentially eligible DIC claimants, VA nonetheless had an independent duty to construct a complete record before deciding the case. Appellants' Br. at 15-17. They assert that evidence is missing from the record, and that the missing evidence may show that, in 1969, VA had "constructive notice" that they were the veteran's children. *Id*. However, the appellants do not assert that VA improperly decided the claim in 1969, nor are they asserting that the 1969 decision should be reopened or revised. Appellants' Suppl. Reply Br. at 8; Oral Argument at 6:33-:39. Further, the Court has determined that the record did not reasonably raise the theory that there is a pending claim dating from when the appellants were "children" as defined by the applicable statute. Consequently, it is not clear what purpose further development would serve, and the Court holds that the appellants have not demonstrated error in this regard. *See Golz v. Shinseki*, 590 F.3d 1317, 1323 (Fed. Cir. 2010) (noting that, in order to conclude that records are relevant, "[t]here must be specific reason to believe these records may give rise to pertinent information"); *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant bears burden of demonstrating error on appeal), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table); *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992) ("'[D]uty to assist' is not a license for a 'fishing expedition' to determine if there *might* be some *unspecified* information which could possibly support a claim."); *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (holding that remand is not warranted where it would unnecessarily impose additional burdens on the Board with no benefit flowing to the veteran).

## IV. CONCLUSION

For the foregoing reasons, the January 29, 2016, Board decisions are AFFIRMED.

ALLEN, *Judge*, concurring in part and dissenting in part: I join in full parts I, II, and III.A of the majority opinion. Judge Schoelen's opinion for the Court explains clearly the appropriate standards for how one determines when someone is a "child" for purposes of the receipt of DIC benefits under 38 C.F.R. § 3.400(c)(4). However, I respectfully dissent with regard to whether the record reasonably raised a theory of recovery under the law the Court describes and, thus, cannot join the balance of the majority opinion.

I agree with the majority about the relevant law that frames this portion of the inquiry. As the majority explains, *see ante* at 8, the Board must consider all theories of entitlement that a claimant expressly asserts or that the record otherwise reasonably raises. *Robinson v. Peake*, 21 Vet.App. 545, 553 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). And I also agree that the Board is not tasked with "assum[ing] the impossible task of inventing and rejecting every conceivable argument in order to produce a valid decision." *Id*.; *see also ante* at 8 (discussing these concepts). I disagree with the majority not about the law, but rather about how the law applies to the facts of these appeals.

In my assessment, there was more than enough evidence in the record to trigger the Board's obligation to consider the appellants' theory of entitlement. *Cf. Robinson*, 447 F.3d at 1361 ("Where a fully developed record is presented to the Board with *no evidentiary support* for a particular theory of recovery, there is no reason for the Board to address or consider such a theory" (emphasis added)). Before explaining why that is so, I pause to underscore one additional point of agreement between the majority and me. The majority notes that "the question before the Court is not whether appellants' theories of recovery have merit, but whether the theories were reasonably raised before the Board such that the Board erred in not discussing them." *Ante* at 10 (citing *Robinson*, 21 Vet.App. at 553). I agree entirely. The appellants may not prevail on the merits; indeed, they may even be unlikely to do so as the Secretary insists. The question that this Court must decide is whether the appellants' theories should be considered on the merits by someone. I conclude they should.

Stripped of legalese, the appellants' argument is that there was something unusual about their grandparents' 1969 application for DIC benefits that should allow VA to treat it as an

application on their behalf for purposes of granting them benefits.[7] In some sense at this point, the particular merits of the appellants' claim are not all that relevant, so long as the theory was raised and is facially plausible. The question instead is whether the Board was on notice that it should explore this general theory of entitlement. The record shows that the Board had such notice.

First, in a Notice of Disagreement (NOD) dated December 27, 2010, appellant Lynch recounted her grandparents' actions in 1969 and tied those actions to her current claim. *See* R. at 184. She stated that

> I feel that the VA should award entitlement to DIC benefits to both me and my sister. During the initial filing in 1969, not all of the correct information & facts were provided for the VA to make a true and accurate decision. We should be provided monetary benefits, as well as educational benefits. Because we were so young at the time of death, we had no idea that we should be entitled to children's DIC.

*Id*. This document clearly highlights the theory that there was something about the 1969 application that VA should consider as part of adjudicating appellants' claims. Again, it may be that the answer to the ultimate question is adverse to appellants, but they sufficiently raised the theory of recovery.[8]

Second, both appellants submitted VA Forms 9 in which they raised the same general arguments concerning their grandparents' conduct in 1969 and how that conduct potentially affected their claims for DIC benefits. *See* R. at 118 (Martinez Form 9), 120 (Lynch Form 9). These documents mirror in many respects the assertions contained in Ms. Lynch's NOD. But they also make a more express argument when concluding as follows: "To summarize our requests, we are requesting 'lump sum' retroactive benefit[s] to be awarded. Our grandparents essentially committed fraud in order to obtain the monies due." *Id*.

---

[7] At oral argument, appellants summarized that this case is about the following: "whether the [Board] erred when it said that . . . it could review no evidence and . . . was required to deny the claim as a matter of law. We maintain that . . . [the Board] was, in fact, able to and should have considered . . . whether an application filed in 1969 by the grandparents of the appellants counted as an application either informal, incomplete, or defective, for the children." Oral Argument at 1:47, *Lynch v. Wilkie*, U.S. Vet. App. No. 16-0541 (argued Aug. 21, 2018), http://www.uscourts.cavc.gov/documents/Lynch-Martinez.mp3.

[8] It does not appear that appellant Martinez's NOD is a part of the record before the Court. However, there also does not appear to be any dispute that she filed an NOD or that the contents of that NOD likely mirror those in appellant Lynch's NOD that is a part of the record. Moreover, appellant Lynch's NOD of record refers to the claims of both appellants: "At the time of his death, [the veteran] did, in fact, have two minor children. I Marlesa Lynch . . . [and] my sister, Cynthia Martinez." R. at 184.

And third, there was extensive testimony at a Board hearing about the grandparents' conduct in 1969. *See, e.g.,* R. at 54-55, 57, 61-62. This testimony fleshed out the general allegations appellants had raised in their NODs and Forms 9. In my view, this testimony, when combined with the other information before the Board, was sufficient to raise the theory of entitlement appellants have argued before the Court.

The majority generally recognizes this evidence but concludes that "[w]hile the evidence cited may suggest that the 1969 application was not accurately completed, it does not necessarily follow that identifying inaccuracies in the 1969 application submitted by the veteran's parents reasonably raises the theory that the application should be considered as one filed on behalf of the appellants." *Ante* at 9. To support this reading of the record, the majority notes that at the Board hearing the non-lawyer representing appellants stated that the 1969 application was not submitted on behalf of the appellants. *See id.* (citing R. at 52). This statement is certainly correct as a matter of fact. But appellants' theory is not premised on an argument that—in reality—their grandparents submitted a formal application for them. The grandparents apparently were acting in ways at odds with their granddaughters, appellants Lynch and Martinez. Thus, I do not rely greatly on this statement, from a non-lawyer representative, [9] as foreclosing the more general arguments concerning the 1969 application. This is even more so because of the other assertions about the 1969 application in the record, including the subsequent testimony at the Board hearing.

As to the plausibility of their theory, the law offers enough of a hook to render the Board's decision to ignore it prejudicial. For example, if we focus solely on the appellant's theory that the 1969 application was "incomplete" until remedied by their 2010 filings, they argue that the first application was missing a "critical element" when it omitted the veteran's dependent children. Appellant's Supp. Br. at 7 (citing *Fleshman v. West*, 138 F.3d 142 (1998)). They allege that as a consequence of that missing element, their recent filings relate back to 1969 when they were eligible DIC recipients. As discussed above, the NOD, VA Form 9, and Board hearing transcript explain this theory under a sympathetic reading.

---

[9] My reference to the statement being made by a non-lawyer should not be taken to be a derogatory comment on the assistance of veterans service organizations. The men and women in these organizations serve thousands of veterans each year. They deserve accolades. My comment is meant to underscore that the statement at issue is now being given tremendous *legal* significance in this appeal. The fact that it was made by someone without legal training underscores my concern that the majority places far too much weight on it.

Whether this reasoning makes a winning argument has no bearing on the Board's duty to address it and explain its decision. And the Secretary's various arguments on the merits are nothing more than post hoc reasons or bases, which the Board should have provided in the first instance. *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156 (1991) ("'[L]itigating positions' are not entitled to deference when they are merely appellate counsel's 'post hoc rationalizations' for agency action advanced for the first time in the reviewing court.").

At the end of the day, I simply view the evidence differently than does the majority. I believe the record required the Board to consider whether there was something about the 1969 application that would allow it to provide relief. Its failure to do so was error. I would remand the matter for the Board to develop the claim and render a decision on appellants' reasonably raised theory of entitlement to DIC benefits.[10] Accordingly, I respectfully dissent from the majority's contrary decision.

---

[10] The Board's error can't be deemed harmless. *See* 38 U.S.C. § 7261(c)(2) (requiring the Court to "take due account of the rule of prejudicial error."). The Board concluded that the duty to assist did not apply to appellants' claims because "the law, and not the evidence, is dispositive in this case." R. at 4 (Lynch decision), 14 (Martinez decision). The Court would have to engage in too much speculation to conclude that the development of the appellants' claims would not produce anything helpful with respect to their claims.